19-1390-cr
United States v. Moore

# In the
# United States Court of Appeals
## for the Second Circuit

August Term, 2019
No. 19-1390-cr

UNITED STATES OF AMERICA,
*Appellee*,

*v.*

JONATHAN T. MOORE,
*Defendant-Appellant*.

Appeal from the United States District Court
for the Southern District of New York.
No. 1:08-cr-134 — Loretta A. Preska, *Judge*.

ARGUED: MARCH 9, 2020
DECIDED: SEPTEMBER 15, 2020

Before: CHIN, SULLIVAN, and NARDINI, *Circuit Judges*.

Defendant-Appellant Jonathan T. Moore appeals from a final order of the United States District Court for the Southern District of New York (Loretta A. Preska, *J.*) denying his motion for a reduction in sentence

pursuant to the First Step Act of 2018 ("First Step Act"). Moore argues that the district court erred by failing to recalculate his advisory range under the United States Sentencing Guidelines in light of case law that was decided subsequent to his sentencing. Moore also argues that the district court's decision relied on a factual error regarding his prison disciplinary record. We conclude that, when determining whether or to what extent to exercise discretion under the First Step Act to grant a sentence reduction to an eligible defendant, a district court is not obligated to re-calculate the defendant's Guidelines range except to reflect changes that flow from the Fair Sentencing Act of 2010. We also conclude that the district court's minor factual misstatement regarding Moore's disciplinary record did not affect his substantial rights. We therefore **AFFIRM** the decision of the district court.

---

> YUANCHUNG LEE, Federal Defenders of New York, Inc., New York, New York, *for Defendant-Appellant.*
>
> ANNA M. SKOTKO (Sarah K. Eddy, on the brief), Assistant United States Attorneys, *for* Audrey Strauss, Acting United States Attorney for the Southern District of New York, New York, New York, *for Appellee.*

WILLIAM J. NARDINI, *Circuit Judge*:

Defendant-Appellant Jonathan T. Moore appeals from a final order entered on May 7, 2019, in the United States District Court for the Southern District of New York (Loretta A. Preska, *J.*), denying his motion for a

sentence reduction pursuant to the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, 132 Stat. 5194. Moore argues that the district court erred by failing to recalculate his advisory range under the United States Sentencing Guidelines in light of case law that was decided subsequent to his sentencing. Moore also argues that the district court erred by relying on a factual error regarding his prison disciplinary record.

As we explain below, in determining whether and to what extent to exercise its discretion under the First Step Act to reduce an eligible defendant's sentence, a district court is not obligated to re-calculate the defendant's Guidelines range except to reflect changes that flow from the Fair Sentencing Act of 2010 ("Fair Sentencing Act"), Pub. L. 111-220, 124 Stat. 2372. Moreover, the record provides no basis to conclude that the district court's minor factual misstatement regarding Moore's disciplinary record affected his substantial rights. We therefore **AFFIRM** the decision of the district court.

## I. Background

### A. Moore's conviction and sentence

On September 28, 2007, a police officer stopped Moore's car after observing the rear license plate swinging loosely. As the officer walked up to the car, he saw Moore push something down in the space between the driver's seat and the door. The officer opened the driver's side door and saw a loaded gun with an obliterated serial number. After arresting Moore, the officer searched the car and found 5.8 grams of crack cocaine. Moore admitted that both the gun and the drugs were his.

On January 7, 2009, Moore pled guilty to (1) possessing a firearm following a felony conviction, in violation of 18 U.S.C. § 922(g); and (2) possessing with intent to distribute more than 5 grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).

Moore had a long criminal history, including at least five drug felonies, as well as convictions for trespass, possession of stolen property, larceny, resisting arrest, and misdemeanor assault. In the Presentence Report ("PSR") prepared in advance of Moore's sentencing, the U.S.

4

Probation Office placed him in criminal history category VI pursuant to the 2008 Guidelines, which were in effect at time of his sentencing.

As to the applicable offense level, the PSR stated that, pursuant to U.S.S.G. § 3D1.2(d) and § 3D1.3(a),[1] the firearm and narcotics counts could be grouped. The PSR went on to determine that Moore was a career offender, based in part on his prior conviction under New York Penal Law § 220.31 for fifth-degree criminal sale of a controlled substance. And as a career offender convicted of a controlled substance offense carrying a statutory maximum term of 40 years' imprisonment, 21 U.S.C. § 841(b)(1)(B), Moore's offense level was calculated at 34 pursuant to U.S.S.G. § 4B1.1(b)(B).[2] Reductions for acceptance of responsibility finally

---

[1] In fact, the grouping should have occurred under U.S.S.G. § 3D1.2(c), not § 3D1.2(d).

[2] Had Moore not been a career offender, his offense level would have been 32 pursuant to U.S.S.G. § 2K2.1. *See* PSR 6.

5

yielded a total offense level of 31.  Because of his status as a career offender,

Moore was also automatically deemed to be in criminal history category VI.[3]

The combination of offense level 31 and criminal history category VI

resulted in a Guidelines range of 188-235 months in prison.

On June 16, 2009, the district court (Stephen C. Robinson, *J.*) adopted

the PSR's Guidelines calculation and sentenced Moore to the bottom of the

range: a total of 188 months in prison, to be followed by four years of

supervised release.  Moore is presently serving his prison sentence, with a

projected release date of May 22, 2021.

B.     **The Fair Sentencing Act and First Step Act**

About a year after Moore's sentencing, on August 3, 2010, the Fair

Sentencing Act took effect, which increased the drug amounts needed to

trigger mandatory minimum sentences for crack cocaine trafficking

---

[3] Even if Moore had not been a career offender, his 22 prior convictions and 23 criminal history points would have put him comfortably in criminal history category VI. *See* PSR 7-15.

offenses.[4]  Before the Fair Sentencing Act, an offense charged as involving 5 grams or more of crack cocaine carried a minimum of 5 years and a maximum of 40 years in prison under 21 U.S.C. § 841(b)(1)(B)(iii).  Section 2 of the Fair Sentencing Act raised the threshold quantity for that penalty range to 28 grams.[5]  Section 3 eliminated the 5-year mandatory minimum sentence for simple possession of crack cocaine under 21 U.S.C. § 844(a).[6] The Fair Sentencing Act did not apply retroactively; it applied only to defendants sentenced on or after August 3, 2010.[7]

---

[4] Pub. L. No. 111-220, 124 Stat. 2372 (2010); *see Dorsey v. United States*, 567 U.S. 260, 269 (2012).

[5] Section 2 also raised the threshold quantity of crack cocaine from 50 grams to 280 grams for a prison range of ten years to life for offenses charged under 21 U.S.C. 841(b)(1)(A)(iii). *See* 124 Stat. 2372.

[6] *See Dorsey*, 567 U.S. at 269.

[7] *Id*. at 282; *United States v. Martin*, No. 19-1701, 2020 WL 5240648, at *3 (2d Cir. Sept. 3, 2020).

On December 21, 2018, the First Step Act became law.[8] Section 404(b) of the First Step Act states that a court that imposed a sentence for a "covered offense," as defined in § 404(a),[9] may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed."[10] Such a reduction "is discretionary . . . and a district judge may exercise that discretion to deny relief where appropriate."[11]

### C. Moore's motion for a reduced sentence

On April 15, 2019, Moore moved for a sentence reduction under § 404(b). His motion explained that, had the Fair Sentencing Act been in

---

[8] Pub. L. No. 115-391, 132 Stat. 5194 (2018).

[9] Section 404(a) defines "covered offense" to include "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . that was committed before August 3, 2010." *Id*. § 404(a), 132 Stat. at 5222.

[10] *Id*. § 404(b), 132 Stat. at 5222.

[11] *United States v. Johnson*, 961 F.3d 181, 191 (2d Cir. 2020); *see also United States v. Holloway*, 956 F.3d 660, 666 (2d Cir. 2020) ("The First Step Act is clear that it does not 'require a court to reduce any sentence.'" (quoting First Step Act § 404(c), 132 Stat. at 5222)).

effect at the time of his sentencing, he would not have been subject to any statutory minimum sentence, and his statutory maximum would have been 20 years instead of 40. Consequently, his base offense level under the career offender Guideline – which is keyed to a defendant's statutory maximum prison term – would have been 32 instead of 34. After a reduction for acceptance of responsibility, his total offense level would have been 29. Combining this offense level with criminal history category VI (which applied regardless of his career offender status) would have yielded a revised range of 151-188 months.

Stressing that the district court had originally sentenced him at the bottom of the then-applicable Guidelines range (188 months), Moore asked that the court "reduce the sentence to the bottom of the now-applicable guidelines range to a sentence of 151 months."[12] He also asked that the district court reduce his term of supervised release to 3 years. In seeking

---

[12] App'x at 24.

this reduction, Moore asserted that, during his incarceration, he had held multiple jobs, received positive work evaluations, gained valuable skills, obtained his GED, and completed additional vocational programs. He said that, if released, he planned to live with his wife and seek work in construction, before eventually becoming a social worker.

The Government opposed Moore's motion. While agreeing that Moore was eligible for a sentence reduction under the First Step Act, the Government asked the district court to exercise its discretion to deny the motion in light of Moore's criminal history and prison disciplinary record. The Government provided the court with a list of Moore's infractions while incarcerated, which included: (a) possessing drugs/alcohol in 2018; (b) fighting with another person in 2016; (c) possessing an unauthorized item in 2015; (d) possessing a dangerous weapon in 2012; and (e) failing to follow safety regulations in 2009.

### D. The district court's decision

On May 7, 2019, the district court denied Moore's motion.[13] Of the applicable revised Guidelines range, the district court said only that "[t]he Government agrees that . . . the new sentencing guideline range is between 151 and 188 months."[14] The district court then explained that it was declining to exercise its discretion to reduce Moore's sentence because the more positive aspects of his background were "simply outweighed" by his "conduct while in prison and lengthy criminal history."[15] Moore had engaged in a "relatively unbroken string of criminal activity other than periods of incarceration from the time [he] was 22 or so years old."[16]

---

[13] In 2011, the case had been re-assigned to Judge Loretta J. Preska.

[14] App'x at 66.

[15] *Id.* at 67.

[16] *Id.* (internal quotation marks omitted).

Moore's many serious infractions after his 2009 sentencing left it "clear that string continues unbroken."[17]

In describing Moore's infractions, the district court stated that he had "possessed a dangerous weapon, possessed narcotics, and fought with another inmate, all in the last 4 years."[18] That explanation contained one factual misstatement: As reflected properly in the Government's opposition to Moore's motion, Moore's narcotics and fighting infractions occurred within the last four years, but his dangerous weapon infraction occurred seven years prior.

This appeal followed.

## II. Discussion

"We typically review the denial of a motion for a discretionary sentence reduction for abuse of discretion."[19] But when "[t]he underpinning

---

[17] *Id.* at 68.

[18] *Id.* at 67.

[19] *Holloway*, 956 F.3d at 664.

12

of the district court's ruling [is] statutory interpretation, we review it *de novo*."[20] We review the district court's factual findings for clear error.[21]

A district court considering a motion for a sentence reduction under the First Step Act must conduct a two-part inquiry. First, the court must determine whether the defendant is eligible for a reduction. Second, if the defendant is eligible, the court must determine whether, and to what extent, to exercise its discretion to reduce the sentence.[22]

This Court has addressed the eligibility stage of the inquiry in three recent decisions. In *United States v. Holloway*, we held that First Step Act motions are governed by 18 U.S.C. § 3582(c)(1)(B), "which provides that a 'court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute.'"[23] The First Step Act permits a

---

[20] *United States v. Williams*, 551 F.3d 182, 185 (2d Cir. 2009).

[21] *See United States v. McCrimon*, 788 F.3d 75, 78 (2d Cir. 2015).

[22] *See Holloway*, 956 F.3d at 666.

[23] *Id*. (quoting 18 U.S.C. § 3582(c)(1)(B)).

reduction only for a sentence imposed for a "covered offense," and defines the term "covered offense" to encompass "'a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act.'"[24] In *United States v. Johnson*, we clarified that "it is the statute under which a defendant was convicted, not the defendant's actual conduct, that determines whether a defendant was sentenced for a 'covered offense' within the meaning of Section 404(a)."[25] Most recently, in *United States v. Martin*, we confirmed that the First Step Act authorizes only "the imposition of a reduced sentence for specific offenses, and where an inmate has already served his sentence for that specific offense, the Act does not authorize any relief."[26]

---

[24] *Johnson*, 961 F.3d at 185 (quoting First Step Act § 404(a), 132 Stat. at 5222).

[25] *Id.* at 187.

[26] *Martin*, 2020 WL 5240648, at *2; *see id.* at *8 ("The First Step Act . . . provides no text authorizing a court to alter sentences other than those imposed for violations of a 'covered offense.'").

Here, the parties do not dispute that the district court properly determined Moore's eligibility for a reduction under the First Step Act. At issue is only the second, discretionary stage of the inquiry. Moore argues that the district court abused its discretion by (1) failing to recalculate the Guidelines range to be considered under the First Step Act, in light of case law that post-dated his sentencing; and (2) relying on a factual error regarding his prison disciplinary record. For the reasons that follow, neither contention has merit.

### A.   The district court did not err in calculating the applicable Guidelines range.

Moore first argues that, in calculating the Guidelines range in connection with his First Step Act motion, the district court erroneously failed to consider the impact of this Court's 2018 decision in *United States v. Townsend* that a drug conviction under New York Penal Law § 220.31 cannot serve as a "controlled substance offense" triggering application of the career

offender Guideline.[27]  Applying *Townsend*, Moore argues that he no longer has the predicate offenses necessary to support a career offender enhancement and thus his applicable range should have been 110-137 months rather than 151-188 months.

This appeal marks the first time that Moore has argued that the First Step Act obligated the district court to consider *Townsend* in calculating his Guidelines range.  We therefore review only for plain error.[28]  To meet the plain error standard, Moore must establish four elements:

> (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.[29]

---

[27] *United States v. Townsend*, 897 F.3d 66, 75 (2d Cir. 2018).

[28] *See United States v. Villafuerte*, 502 F.3d 204, 211 (2d Cir. 2007) (applying plain error analysis to unpreserved sentencing challenge); *see also* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

[29] *United States v. Balde*, 943 F.3d 73, 96 (2d Cir. 2019) (internal quotation marks omitted); *see Villafuerte*, 502 F.3d at 209.

We begin (and end) with the first of these requirements: whether the district court committed an error at all.

Moore's *Townsend* argument raises a question of first impression in our Circuit. We have not previously addressed whether the First Step Act requires a district court to recalculate a defendant's Guidelines range to account for anything other than what flows from Sections 2 and 3 of the Fair Sentencing Act, such as new Guidelines provisions or new judicial interpretations of existing Guidelines.[30]

---

[30] We recognize that other Circuits have split on this issue. *Compare United States v. Denson*, 963 F.3d 1080, 1089 (11th Cir. 2020) ("[I]n ruling on a defendant's First Step Act motion, the district court . . . is not free to . . . reduce the defendant's sentence on the covered offense based on changes in the law beyond those mandated by sections 2 and 3 [of the Fair Sentencing Act] . . . ."), *United States v. Kelley*, 962 F.3d 470, 475 (9th Cir. 2020) ("[T]he First Step Act authorizes the district court to consider the state of the law at the time the defendant committed the offense, and change only one variable: the addition of sections 2 and 3 of the Fair Sentencing Act as part of the legal landscape."), *and United States v. Hegwood*, 934 F.3d 414, 418 (5th Cir.) ("The district court decides on a new sentence by placing itself in the time frame of the original sentencing, altering the relevant legal landscape only by the changes mandated by the 2010 Fair Sentencing Act."), *cert. denied*, 140 S. Ct. 285 (2019), *with United States v. Boulding*, 960 F.3d 774, 784 (6th Cir. 2020) (holding that review of a First Step Act motion requires "an accurate calculation of the amended guidelines range at the time of resentencing"), *and United States v. Chambers*, 956 F.3d 667, 668, 673-74 (4th Cir. 2020) (in considering a First Step Act motion, a district court "must" correct "[r]etroactive Guidelines errors based on intervening case law"); *see also United States v. Stewart*, 964 F.3d 433, 435-36, 438 (5th Cir. 2020) (in reviewing a First Step Act

17

The text of the First Step Act runs contrary to Moore's argument.[31]  By its express terms, the statute does not require plenary resentencing or operate as a surrogate for collateral review, obliging a court to reconsider all aspects of an original sentencing.[32]  What the First Step Act does say is simply this: A district court may "impose a reduced sentence *as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed*."[33]  Through its "as if" clause, all that § 404(b) instructs a district court to do is to determine the impact of Sections 2 and 3 of the Fair Sentencing Act – two provisions of law that modified the drug quantity

motion, a district court errs in failing to consider a Guidelines amendment promulgated in direct response to congressional instruction in the Fair Sentencing Act; however, the court should not allow a defendant to "take advantage of changes in the law that have nothing to do with" the Fair Sentencing Act).

[31] *Cf. Martin*, 2020 WL 5240648, at *5 ("[I]t seems logical to start with [the First Step Act's] plain language.").

[32] *See Hegwood*, 934 F.3d at 415 ("[T]he First Step Act does not allow plenary resentencing . . . ."); *see also Martin*, 2020 WL 5240648, at *8 ("[S]ection 404(b)'s text, along with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence.") (internal quotation marks and alteration omitted).

[33] First Step Act § 404(b), 132 Stat. at 5222 (emphasis added).

thresholds for defendants who were prosecuted for crack cocaine trafficking under 21 U.S.C. § 841(b)(1)(A)(iii) or (B)(iii), or 21 U.S.C. § 960(b)(1)(C) or (2)(C) (with respect to Section 2) or crack cocaine possession under 21 U.S.C. § 844(a) (with respect to Section 3). To be sure, in order to consider a defendant's sentence "as if" Sections 2 and 3 had been in effect at the time of the offense, a district court must take into account Guidelines range changes that result directly from the retroactive application of Sections 2 and 3. Thus, in Moore's case, it was certainly correct for the district court to lower his offense level from 34 to 32 under § 4B1.1 under the 2008 Guidelines pursuant to which he was sentenced, to account for the lower statutory maximum that would have applied under Section 2. But § 404(b) issues no directive to allow re-litigation of other Guidelines issues—whether factual or legal—which are unrelated to the retroactive application of the Fair Sentencing Act.

Moore argues that a contrary conclusion is required by two phrases in the First Step Act, but we find his contentions unpersuasive. First, he

points out that § 404(b) of the First Step Act authorizes a district court to "impose a reduced sentence." He argues that Congress's use of the word "impose" mirrors its use in statutes governing a defendant's original sentencing – namely, 18 U.S.C. §§ 3553 and 3661 – such that the district court's obligations with respect to the Guidelines are therefore the same in both situations: they must be calculated *de novo*. But Moore's argument fails because it considers the word "impose" in isolation. As we have already noted, the First Step Act does not simply authorize a district court to "impose a sentence," period. Instead, it authorizes the court to do so subject to the "as if" clause – that is, to determine the impact of sections 2 and 3 of the Fair Sentencing Act. It would contravene the statutory text to interpret the First Step Act to require a district court to give retroactive effect to additional legal provisions not driven by the Fair Sentencing Act, or to require a district court to engage in collateral review of other unrelated issues that were previously adjudicated.

Second, Moore points out that § 404(c) of the First Step Act bars defendants from filing successive sentence reduction motions if their first motion was "denied after a complete review of the motion on the merits." Again, Moore reads too much into this language. Section 404(c) charges a district court only with "review" of a defendant's motion. It does not require that any particular procedures be followed during that review, much less that the review entail a full-blown opportunity to relitigate Guidelines issues, whether legal or factual. Moreover, it would be strange for Congress to have obliquely slipped a standard for adjudicating First Step Act motions into a provision that bars repetitive litigation. That would be, indeed, an elephant in a mousehole.[34]

The scope of Moore's proposed rule would effectively turn every First Step Act motion into a *de facto* plenary resentencing. If a district court must

---

[34] *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not alter the fundamental details of a regulatory scheme in . . . ancillary provisions—it does not, one might say, hide elephants in mouseholes.").

engage in *de novo* Guidelines calculations, then the court would have to consider not only intervening case law but also novel legal arguments about why a previous Guidelines calculation was incorrect, or even novel factual arguments to that effect (such as, for example, a dispute over a narcotics quantity attributed to a defendant). We do not read the limited procedural vehicle provided by the First Step Act as requiring a district court to broadly revisit every aspect of a criminal sentence.[35]

We therefore hold that the First Step Act does not entail a plenary resentencing, and that it does not obligate a district court to recalculate an

---

[35] For this reason, we do not find persuasive Moore's suggestion that the district court was required to apply *Townsend* because that decision simply interpreted "what controlled substance offense under [U.S.S.G.] § 4B1.2 had *always* meant," and so was not a "change [in] the law." Moore Reply at 9-10 (internal quotation marks and alterations omitted); *see also* Moore Br. at 25-26 n.9 ("[A] Guidelines calculation that takes account of *Townsend* is the *correct* calculation, not merely the 'current' calculation. The previous Guidelines calculation, which counted Mr. Moore as a Career Offender, was simply wrong. And there is no reason to privilege the incorrect range over the correct one."). As the Ninth Circuit has already explained, not only would such an exception contravene the express terms of the First Step Act, but it would "put defendants convicted of crack cocaine offenses in a far better position than defendants convicted of other drug offenses . . . . There is no indication in the statute that Congress intended this limited class of crack cocaine offenders to enjoy such a windfall." *Kelley*, 962 F.3d at 478.

eligible defendant's Guidelines range, except for those changes that flow

from Sections 2 and 3 of the Fair Sentencing Act of 2010, when considering

as a discretionary matter whether (or by how much) to grant a sentence

reduction. Because we hold that the First Step Act did not obligate the

district court to consider the impact of *Townsend* on Moore's Guidelines

calculation, there was no legal error here.[36]

---

[36] We hold only that the First Step Act does not obligate a district court to consider post-sentencing developments. We note, however, that a district court retains discretion to decide what factors are relevant as it determines whether and to what extent to reduce a sentence. Moore does not argue that the district court erred by considering his post-sentencing prison disciplinary record, and he in fact asked the court to consider evidence of his post-sentencing rehabilitation. The Fifth Circuit has held that courts are not required to consider post-sentencing changes in factual circumstances but has suggested courts may do so as a matter of discretion. *See United States v. Jackson*, 945 F.3d 315, 322 n.7 (5th Cir. 2019) ("We do not hold that the court *cannot* consider post-sentencing conduct—only that it isn't required to."), *cert. denied*, 206 L. Ed. 2d 839 (Apr. 20, 2020), *reh'g denied*, No. 19-8036, 2020 WL 3146860 (June 15, 2020)); *cf. United States v. Praddy*, 725 F.3d 147, 161 (2d Cir. 2013) ("The sentencing judge has broad discretion to consider all relevant information in determining an appropriate sentence . . . ."). Moreover, we note that we have previously held that First Step Act motions are not governed by 18 U.S.C. § 3582(c)(2). *See Holloway*, 956 F.3d at 665-66. Accordingly, it is clear that a district court's discretion under the First Step Act as to whether to reduce a defendant's sentence (and if so, to what extent) is not limited by the applicable Guidelines range. When considering whether to impose a reduced sentence under the First Step Act, the district court retains the same discretion under *United States v. Booker*, 543 U.S. 220 (2005), to vary from the advisory Guidelines that it would have had at the time of the defendant's sentencing.

## B. The district court's minor factual misstatement does not require remand.

Moore next argues that the district court erred in describing three of his prison disciplinary infractions as occurring within the last four years when one in fact occurred seven years prior. The Government does not dispute that the district court made a factual misstatement but argues that the error could not have impacted the district court's analysis in any material way.

Because Moore failed to raise this objection below, plain error review once again applies.[37] As noted above, to demonstrate plain error, Moore must establish, among other things, that the district court's error affected his

---

[37] Plain error review differs from simple harmless error review in that, when plain error review applies, "[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *United States v. Olano*, 507 U.S. 725, 734 (1993). In *United States v. Viola*, our Court held that the burden of persuasion shifts back to the Government where the relevant error resulted from a supervening decision that altered settled law. 35 F.3d 37, 41-42 (2d Cir. 1994), *abrogated on other grounds by Salinas v. United States*, 522 U.S. 52 (1997). As before, we express "doubt" that the *Viola* gloss on the plain-error standard has survived the Supreme Court's decision in *Johnson v. United States*, 520 U.S. 461 (1997). *United States v. Grote*, 961 F.3d 105, 116 n.3 (2d Cir. 2020). We need not confront that issue here, however, because our decision would be the same regardless of which party bears the burden of persuasion.

substantial rights.  "An error affects substantial rights if it is prejudicial and it affected the outcome of the district court proceedings."[38]

The district court declined to resentence Moore in light of his "relatively unbroken string of criminal activity other than periods of incarceration from the time [he] was 22 or so years old," as well as his continued prison infractions "consistent" with that history.[39]  To be sure, the district court misplaced one of those infractions along the timeline of Moore's "string" of misbehavior.  But the thrust of the court's observation remains valid: the misplaced infraction did occur; it was just as serious as the judge regarded it; and Moore had indeed continued to commit serious infractions consistent with his prior criminal conduct as recently as 2016 and 2018.  On this record, we have no basis to believe that the difference between four years and seven years, as to the third-to-last infraction, could have been

---

[38] *United States v. McLean*, 287 F.3d 127, 135 (2d Cir. 2002) (internal quotation marks omitted).

[39] App'x at 67 (internal quotation marks omitted).

material to the court's otherwise careful analysis. We therefore find no error warranting remand.

## III.    CONCLUSION

In sum, we hold as follows:

1.    The First Step Act does not require that an eligible defendant receive a plenary resentencing, and it does not obligate a district court to recalculate an eligible defendant's Guidelines range, except to account for those changes that flow from Sections 2 and 3 of the Fair Sentencing Act of 2010, when considering as a discretionary matter whether (or by how much) to grant a sentence reduction.

2.    The district court's minor factual misstatement regarding the timing of one of Moore's prison disciplinary infractions does not require remand because the error did not affect his substantial rights.

We therefore **AFFIRM** the decision of the district court.