*United States v. Lewis*

# United States Court of Appeals
## For the Second Circuit

August Term 2024

Submitted: December 12, 2024
Decided: January 3, 2025

No. 24-504

UNITED STATES OF AMERICA,

*Appellee*,

*v.*

CHANETTE LEWIS, a.k.a. Netty Hott,

*Defendant-Appellant*,

TATIANA BENJAMIN, a.k.a. Ta Banks, a.k.a. Lyric Muvas, TATIANA DANIEL, a.k.a. Kimora Daniel, HEAVEN WEST,

*Defendants.*[*]

Appeal from the United States District Court
for the Southern District of New York
No. 21-cr-729, Lewis A. Kaplan, *Judge*.

Before: SULLIVAN, MENASHI, and KAHN, *Circuit Judges*.

---

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

Chanette Lewis appeals from a judgment of conviction of the United States District Court for the Southern District of New York (Kaplan, *J.*) following her guilty plea to two counts of conspiracy to commit wire fraud in connection with a COVID-19 relief program, an unemployment insurance program, and the New York City Housing Authority. The district court sentenced Lewis to thirty-six months' imprisonment, to be followed by three years' supervised release, and ordered forfeiture and restitution. For Lewis's term of supervised release, the district court imposed the mandatory conditions required under 18 U.S.C. § 3583(d); the standard conditions recommended under U.S. Sentencing Guidelines section 5D1.3(c); and four special conditions, which were set forth in the presentence investigation report (the "PSR") and which Lewis and her attorney acknowledged they had read. Prior to imposing sentence, the district court asked the parties if they wished for the court to read aloud the special conditions set forth in the PSR. Counsel for each party replied, "No."

On appeal, Lewis now argues that the district court erred by (1) failing to orally pronounce the special conditions at the sentencing hearing, (2) failing to explain the reasons for the special conditions, and (3) imposing an overly broad electronic search condition. We disagree, and hold that when a defendant declines the court's invitation to read aloud a condition of supervised release referenced in the PSR, she waives any argument on appeal that the district court failed to orally pronounce that condition. We also reject Lewis's other arguments and conclude that the district court's reasons for imposing each of the four special conditions are self-evident in the record, and that the electronic search condition is narrowly tailored. Accordingly, we **AFFIRM** the judgment of the district court.

AFFIRMED.

Colleen P. Cassidy, Federal Defenders of New York, Inc., New York, NY, *for Defendant-Appellant*.

Michael D. Neff, James Ligtenberg, Assistant United States Attorneys, *for* Edward Y. Kim, Acting United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.

PER CURIAM:

Chanette Lewis appeals from a judgment of conviction of the United States District Court for the Southern District of New York (Kaplan, *J.*) following her guilty plea to two counts of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371, in connection with a COVID-19 relief program, an unemployment insurance program, and the New York City Housing Authority ("NYCHA"). The district court sentenced Lewis to thirty-six months' imprisonment, to be followed by three years' supervised release, and ordered forfeiture and restitution. For Lewis's term of supervised release, the district court imposed the mandatory conditions required under 18 U.S.C. § 3583(d); the standard conditions recommended under U.S. Sentencing Guidelines ("Guidelines") section 5D1.3(c); and four special conditions, which were set forth in the presentence investigation report (the "PSR") and which Lewis and her attorney acknowledged they had read. Prior to imposing sentence, the district court asked the parties if they wished for the court to read aloud the special conditions set forth in the PSR. Counsel for each party replied, "No."

On appeal, Lewis now argues that the district court erred by (1) failing to orally pronounce the special conditions at the sentencing hearing, (2) failing to

3

explain the reasons for the special conditions, and (3) imposing an overly broad electronic search condition. We disagree, and hold that when a defendant declines the court's invitation to read aloud a condition of supervised release referenced in the PSR, she waives any argument on appeal that the district court failed to orally pronounce that condition. We also reject Lewis's other arguments and conclude that the district court's reasons for imposing each of the four special conditions are self-evident in the record, and that the electronic search condition is narrowly tailored. Accordingly, we AFFIRM the judgment of the district court.

## I. BACKGROUND

From April 2020 until September 2021, at the height of the COVID-19 pandemic, Lewis was an organizer and leader of three fraudulent schemes involving various government entities. In March 2020, New York City established the COVID-19 Hotel Room Isolation Program (the "Hotel Program") to provide free hotel rooms to patients recovering from COVID-19 and to healthcare workers who needed to isolate because they had been exposed to the virus during their work duties. The Hotel Program was subsequently expanded to other at-risk or infected individuals who did not have a safe place to self-isolate. At the time, Lewis worked at a call center that handled reservations for the Hotel Program,

4

which provided Lewis with access to the personally identifiable information (the "PII") of healthcare workers. Lewis exploited this position and conspired with her co-defendants to fraudulently reserve hotel rooms, make them available to ineligible individuals for a fee, and keep the proceeds. Part of this scheme involved using the PII of healthcare workers to create fraudulent documents so that ineligible individuals could book hotel rooms. Lewis used Facebook to organize the conspiracy, advertise the hotel rooms, and communicate with customers, and she received payments from customers through electronic fund transfer services such as CashApp, Zelle, Chime, and PayPal.

While engaging in the Hotel Program fraud, Lewis also fraudulently obtained unemployment insurance benefits. In particular, she submitted an application under her own name, claiming that she was unemployed due to the COVID-19 pandemic when, in fact, she was employed at the above-referenced call center. Lewis also conspired with another individual to submit an unemployment insurance application for her brother, who was incarcerated at the time and thus ineligible for these benefits. Both applications were submitted online.

Finally, Lewis enabled individuals to obtain NYCHA public-housing benefits to which they were not entitled, in exchange for a fee. Specifically, Lewis

5

helped new residents obtain NYCHA housing and existing NYCHA residents secure larger apartments and emergency transfers within NYCHA by creating and submitting false documents on their behalf. Recognizing that the demand for NYCHA housing is exceptionally high, resulting in long wait times for applicants to receive NYCHA benefits or unit transfers, Lewis discovered that NYCHA often expedited this process for crime victims and individuals with certain medical conditions. She therefore created fake orders of protection bearing the name of a certain state-court judge, falsified letters from the medical practice of a specific doctor, and forged letters from the Brooklyn District Attorney's Office stating that the applicant was either a crime victim or a trial witness. Lewis used electronic devices to create these false records, advertised her scheme using Facebook, submitted applications using NYCHA's online portal, and accepted payment via CashApp.

On December 22, 2022, Lewis pleaded guilty to two counts of conspiring to commit wire fraud in violation of 18 U.S.C. § 371. Lewis then appeared for sentencing on February 8, 2024. The district court determined the Guidelines range to be 41 to 51 months' imprisonment, which neither party disputed. The district court then imposed a below-Guidelines sentence of 36 months'

imprisonment on each count, to run concurrently and to be followed by three years of supervised release, and ordered forfeiture in the amount of $289,536 and restitution in the amount of $360,330. In addition to the mandatory and standard conditions of supervised release, the district court imposed four special conditions that were recommended in the PSR and that required Lewis to (1) provide the U.S. Probation Office with access to her financial information, (2) obtain the approval of the Probation Office before incurring any new credit charges or opening additional lines of credit, (3) participate in an outpatient mental-health treatment program, and (4) submit her person and property, including any computers, electronic communications devices, and data storage devices, to a search by the Probation Office upon reasonable suspicion of a violation of a condition of supervised release or any other unlawful conduct. Lewis timely appealed her sentence.

## II. STANDARD OF REVIEW

We ordinarily review challenges to conditions of supervised release for abuse of discretion. *See United States v. Boles*, 914 F.3d 95, 111 (2d Cir. 2019). However, when a defendant is on notice that a condition of supervised release will be imposed and fails to object, we review the defendant's arguments on appeal for

7

plain error.  *See United States v. Dupes*, 513 F.3d 338, 343 & n.2 (2d Cir. 2008).  To establish plain error, a defendant must show "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the [defendant's] substantial rights; and (4) the error seriously affects the fairness, integrity[,] or public reputation of judicial proceedings."  *United States v. Moore*, 975 F.3d 84, 90 (2d Cir. 2020) (internal quotation marks omitted).  The defendant bears the burden of establishing each of these elements.  *See United States v. Dussard*, 967 F.3d 149, 156 (2d Cir. 2020).  We have warned that "reversal for plain error should be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result."  *United States v. Villafuerte*, 502 F.3d 204, 209 (2d Cir. 2007) (internal quotation marks omitted).

## III.   DISCUSSION

### A. Lewis waived any argument on appeal that the district court erred by not orally pronouncing the special conditions.

Lewis first argues that the district court erred by failing to orally pronounce the four special conditions of supervised release at her sentencing.  At the sentencing hearing, the district court first confirmed that Lewis had ample time to review the PSR, "had read the whole thing," and did not have "any unresolved objections" to the report.  Lewis App'x at 79.  When pronouncing its sentence, the

8

district court indicated its intention to impose "the special conditions of supervision set forth at pages 48 through 50 of the [PSR]." *Id.* at 96. The district court then asked, "In view of the fact that the defendant said she has read the entire presentence report, does either counsel want me to read out the conditions?" *Id.* Lewis's defense counsel responded, "No, your Honor." *Id.*

We have previously explained that a defendant waives her challenge on appeal when she makes an "intentional decision not to assert a right or . . . acts intentionally in pursuing, or not pursuing, a particular course of action." *United States v. Williams*, 930 F.3d 44, 64–65 (2d Cir. 2019) (alteration accepted and internal quotation marks omitted). A true waiver "extinguishes the claim altogether" and "will negate even plain error review." *United States v. Yu-Leung*, 51 F.3d 1116, 1121–22 (2d Cir. 1995) (internal quotation marks omitted). Waiver may be found "where a party actively solicits or agrees to a course of action that [s]he later claims was error." *United States v. Spruill*, 808 F.3d 585, 597 (2d Cir. 2015).

Consistent with these precedents, we hold that when a defendant, such as Lewis, declines the district court's invitation to read aloud a condition of supervised release referenced in the PSR, she waives any argument on appeal that the district court did not orally pronounce that condition. *See United States v.*

9

*Agrawal*, 726 F.3d 235, 259 (2d Cir. 2013) ("[A] negative response on the record to a district court['s] invitation to voice objection[] does more than forfeit the unraised objection; it waives it."). Indeed, we have repeatedly held in summary orders that defendants waived their claims on appeal that the district court failed to orally pronounce conditions of supervised release when the defendants consented to the incorporation of those conditions by reference to the PSR. *See, e.g., United States v. Overstreet*, No. 21-3034, 2023 WL 4286035, at *1 (2d Cir. June 30, 2023); *United States v. Washington*, No. 22-688, 2024 WL 2232464, at *2 (2d Cir. May 17, 2024); *United States v. Bartley*, No. 21-2898, 2024 WL 4284727, at *1–2 (2d Cir. Sept. 25, 2024). Consistent with those decisions, we reject Lewis's argument and conclude that she waived appellate review of this issue here.[1]

## B. The district court's reasons for imposing the special conditions are self-evident in the record.

Lewis next contends that the district court failed to explain its reasons for imposing the four special conditions. Our caselaw is clear that "[a] district court retains wide latitude in imposing conditions of supervised release." *United States*

---

[1] We also reiterate the Supreme Court's admonition that "[n]either paid nor appointed counsel may . . . consume the time and the energies of the court or the opposing party by advancing frivolous arguments. An attorney, whether appointed or paid, is . . . under an ethical obligation to refuse to prosecute a frivolous appeal." *McCoy v. Ct. of Appeals of Wis., Dist. 1*, 486 U.S. 429, 436 (1988).

*v. MacMillen*, 544 F.3d 71, 74 (2d Cir. 2008). Special conditions of supervised release must be "reasonably related to certain statutory factors governing sentencing, involve no greater deprivation of liberty than is reasonably necessary to implement the statutory purposes of sentencing, and [be] consistent with pertinent Sentencing Commission policy statements." *United States v. Eaglin*, 913 F.3d 88, 94 (2d Cir. 2019) (alterations accepted and internal quotation marks omitted). The relevant sentencing factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), as well as "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct[,] to protect the public from further crimes of the defendant[,] [and] to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," *id.* § 3553(a)(2)(B)–(D). We have held that "[a] district court is required to make an individualized assessment when determining whether to impose a special condition of supervised release, and to state on the record the reason for imposing it." *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018). However, if the district court does not provide such an explanation, we may still uphold the

condition imposed "if the district court's reasoning is self-evident in the record." *Id.* (internal quotation marks omitted).

Although Lewis argues that we should apply a relaxed form of plain-error review, our caselaw is clear that traditional plain-error review applies when, as here, a defendant has notice that a condition of supervised release will be imposed and fails to object. *See Dupes*, 513 F.3d at 343 & n.2. Lewis fails to meet that standard because the district court's reasoning for imposing the special conditions is self-evident in the record.

With respect to the conditions that Lewis provide the Probation Office with her financial information upon request and refrain from opening new lines of credit without approval from the Probation Office, such conditions were justified by the need to ensure that Lewis complies with the monthly payment schedule for her court-ordered restitution. Indeed, the Guidelines expressly recommend a condition that requires a defendant to provide the Probation Office with access to requested financial information when the court imposes restitution or forfeiture, *see* U.S.S.G. § 5D1.3(d)(3), as well as a condition pertaining to new lines of credit when "an installment schedule of payment of restitution . . . is imposed," *id.* § 5D1.3(d)(2). And we have previously explained that conditions recommended

by the Guidelines are "necessary to the administration of supervised release" and thus "presumed suitable in all cases." *United States v. Sims*, 92 F.4th 115, 119 n.1 (2d Cir. 2024) (internal quotation marks omitted). In this case, the district court's decision to order restitution and forfeiture makes clear why the court imposed the financial conditions.

The reasons for the district court's imposition of a mental-health treatment condition are similarly self-evident in the record. The PSR documented Lewis's extensive history of mental-health challenges – including diagnoses for schizophrenia, bipolar disorder, panic attacks, anger-management problems, and antisocial behavior – dating back to 2007 when she was fourteen years old. Indeed, Lewis's sentencing submission repeatedly stressed her "long-standing struggle with schizophrenia and bipolar disorder" as a reason for a noncustodial sentence. Lewis App'x at 59–61. Her sentencing submission also noted that she was "experiencing manic symptoms consistent with her bipolar disorder" while committing the instant offenses and argued that "her manic mental state contributed to her enthusiasm for the illicit venture" and "made it especially easy for her to put aside any worries or moral qualms." *Id.* at 62; *see id.* at 64 ("While in the throes of a mental health crisis, she defrauded several government

13

programs."); *id.* at 66 ("Ms. Lewis committed her crimes while she was suffering from an acute manifestation of her mental illness."); *see also id.* ("With the help of better mental health treatment, she has been able to . . . avoid any further involvement with the criminal justice system."). Lewis's defense counsel reiterated these same arguments at her sentencing hearing, and Lewis herself indicated that she "never probably would have [committed the crimes] if [she was] on the medication." *Id.* at 89; *see also id.* at 90 ("If I was on that medication, none of this would have been happening."). A mental-health treatment condition was clearly justified by Lewis's personal history and characteristics, the need to protect the public from future crimes committed by her, and the need to provide Lewis with medical care in the most effective manner.

Likewise, the electronic search condition was amply supported by the record in this case. "We have frequently approved of such conditions where the conduct underlying a conviction . . . has involved the use of computers or other electronic devices." *United States v. Thomas*, 827 F. App'x 72, 75 (2d Cir. 2020). As documented in the PSR, Lewis repeatedly used electronic devices to carry out the three fraudulent schemes charged here. In the COVID-19 hotel scheme, Lewis used Facebook to coordinate with her co-conspirators, advertise hotel rooms, and

14

communicate with her customers. She also used electronic payment services to receive compensation from her customers. In the unemployment scheme, Lewis used electronic devices to submit the fraudulent unemployment applications. And in the NYCHA scheme, she used electronic devices to prepare the forged documents, submit the NYCHA applications, advertise the scheme via Facebook, and receive payment using services such as CashApp. Indeed, Lewis's defense counsel acknowledged in his sentencing submission that the three fraudulent conspiracies were committed "largely over the internet." Lewis App'x at 62. And when Lewis's counsel asked the district court to impose a term of home detention instead of incarceration, he stated that the court could, "in terms of deterrence, have her computer [and] any Internet access monitored by the probation office." *Id.* at 85. Therefore, as the PSR noted, the electronic search condition was justified by the need to "provid[e] the [P]robation [O]ffice with a necessary means to effectively monitor and discourage the defendant from engaging in any further criminal activity as well as protect[] the public." PSR at 47.

Accordingly, we find that the district court did not err in imposing the four special conditions of supervised release because the reasons for imposing each of them are self-evident in the record.

**C. The electronic search condition is narrowly tailored.**

Finally, Lewis challenges the electronic search condition as overbroad and "neither particularized [n]or narrowly tailored to this case." Lewis Br. at 3. To be sure, a special condition of supervised release must "involve no greater deprivation of liberty than is reasonably necessary to implement the statutory purposes of sentencing," and when the condition implicates "fundamental liberty interests," the condition must be "narrowly tailored to serve a compelling government interest." *United States v. Farooq*, 58 F.4th 687, 694 (2d Cir. 2023) (internal quotation marks omitted). Both of those requirements are satisfied here. We have made clear that "[a]n offender on supervised release has a diminished expectation of privacy that is inherent in the very term *'supervised* release.'" *United States v. Balon*, 384 F.3d 38, 44 (2d Cir. 2004) (internal quotation marks omitted). Plus, the electronic search condition at issue is circumscribed and narrowly tailored: The Probation Office must have reasonable suspicion to search Lewis's electronic devices, and the search must be "conducted at a reasonable time and in a reasonable manner." Lewis App'x at 103. "As we have repeatedly explained in affirming [similar] search conditions, th[e]se conditions do not constitute a greater deprivation than reasonably necessary *because* they require reasonable suspicion." *United States v. Oliveras*, 96 F.4th 298, 315 (2d Cir. 2024); *see also United States v.*

*Rakhmatov*, No. 21-151, 2022 WL 16984536, at *2 (2d Cir. Nov. 17, 2022) ("[T]he condition's limitations on searches to circumstances in which reasonable suspicion of a supervised release violation exists and to a reasonable time and manner of search ensure that the condition imposes no greater restraint on liberty than is reasonably necessary." (alteration accepted and internal quotation marks omitted)); *United States v. Stiteler*, No. 22-2732, 2023 WL 4004573, at *1 (2d Cir. June 15, 2023) (affirming electronic search condition because it required reasonable suspicion). We therefore conclude that the district court did not err, let alone plainly err, in imposing the electronic search condition at issue here.

## IV. CONCLUSION

For all the foregoing reasons, we **AFFIRM** the judgment of the district court.