22-2668 (L)
*United States v. Singh*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of March, two thousand and twenty-five.

PRESENT:    Amalya L. Kearse,
            Denny Chin,
            Steven J. Menashi,
                  *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

        *Appellee,*

    v.                                                          Nos. 22-2668, 23-6275

JASMINDER SINGH,

        *Defendant-Appellant,*

RAJPREET KAUR, MANDEEP SINGH,

        *Defendants.**

_____

* The Clerk of Court is directed to amend the caption as set forth above.

*For Appellee*:            MICHAEL W. GIBALDI, Assistant United States Attorney (Nicholas J. Moscow, Assistant United States Attorney, Patrick J. Campbell, Trial Attorney, United States Department of Justice, *on the brief*), *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, New York.

*For Defendant-Appellant*:            PETER J. TOMAO, Garden City, New York.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Amon, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

A jury convicted Defendant-Appellant Jasminder Singh of bank fraud and two counts of unlawful money transactions. *See* 18 U.S.C. §§ 1344, 1957(a), (b). At trial, the government presented evidence that Singh made false representations to American Express about his intent to repay his credit card debts. After initiating payments that increased his available credit, Singh would quickly divert the funds before the payments to American Express could be completed. The government also presented evidence that Singh used the diverted funds to pay an accomplice and to purchase a car for his ex-wife. The district court sentenced him to forty-eight months in prison and two years of supervised release.

On appeal, Singh argues that the evidence was insufficient for his conviction, that the district court abused its discretion by admitting evidence of his ex-wife's and a former employee's personal credit card usage, that the district court abused its discretion by denying his motion to sever his trial from that of his

ex-wife, that the cumulative error doctrine warrants reversal, that the district court miscalculated his guidelines sentencing range, and that the district court erred by imposing a special condition of his supervised release. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

**I**

Singh argues that the evidence did not support the jury's verdict that he committed bank fraud and engaged in unlawful monetary transactions. Specifically, he argues that the evidence did not allow a reasonable jury to infer that he intended to defraud American Express. We disagree. When considering a defendant's challenge to the sufficiency of the evidence, we must give a "high degree of deference" to a jury verdict. *United States v. Landesman*, 17 F.4th 298, 320 (2d Cir. 2021) (quoting *United States v. Anderson*, 747 F.3d 51, 72 (2d Cir. 2014)). We "view[] the evidence in the light most favorable to the prosecution" and ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see United States v. Jimenez*, 96 F.4th 317, 324 (2d Cir. 2024).

The evidence in this case supported the jury's verdict. Bank records showed $7,317,959.65 worth of Apple purchases on the various companies' credit cards between November 2017 and April 2018. Despite receiving nearly $4.5 million from a customer during that period, Singh repaid only $3,809,812.78 by April 2018, leaving an outstanding balance of $4,716,711.29. By the fall, Singh's companies had received $6,857,415.00 from their main customer, yet Singh still failed to repay the outstanding debt.

The evidence also supported the finding that Singh lied to American Express about his intent to repay. In January 2018, while impersonating a former employee, Singh called American Express to initiate a payment so he could generate more available credit. American Express called Singh's bank, which confirmed that there were sufficient funds available. After American Express accepted Singh's payment, freeing up additional credit, Singh quickly drained the

3

account through a complicated series of transactions, causing the payment to bounce. Singh's former employee, Mandeep Singh, helped transfer the funds out of the initial account and into a new one in Jasminder Singh's name. Mandeep testified that he effected the transfer at Singh's direction to "conceal[]" the money from American Express. J. App'x 998; *see also id.* at 999. At Singh's instruction, Mandeep told American Express the "false" excuse that the payment bounced because a customer failed to pay for shipped iPhones. *Id.* at 1012. As a reward for helping to conceal the funds, Singh paid Mandeep $29,000 as his "cut." *Id.* at 1139.

In another episode in January 2018, Singh impersonated his ex-wife on a call with American Express about a card with an outstanding balance of $2.88 million. Singh told American Express that his payments never cleared because a customer failed to pay for a recent shipment. But the bank records show that the customer had sent around $2.8 million shortly beforehand. A jury could infer from this evidence that Singh lied to American Express about his intent to repay in order to secure additional credit. *See* 18 U.S.C. § 1344.

Singh argues here, as he did to the jury at trial, that he had no intent to defraud American Express and that the bounced payments resulted from a customer's failure to pay and that he diverted funds from the companies' accounts to keep his business afloat. Yet the bank records show that this customer made multiple payments to Singh's companies at the same time that Singh was claiming the customer had not made payments. Faced with—at most—competing inferences about the evidence, we must defer to the jury's reasonable determination that Singh intended to defraud American Express. *See Landesman*, 17 F.4th at 319.

## II

Singh challenges the district court's decision to admit evidence that Mandeep and Singh's ex-wife, Rajpreet, used their personal credit cards to purchase iPhones. The district court did not abuse its discretion in admitting this evidence. Under Rule 404(b), a district court may admit evidence of "other

4

crime[s], wrong[s], or act[s]" for non-propensity purposes, such as to prove "intent" or "absence of mistake." Fed. R. Evid. 404(b). Such evidence is admissible "for any purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant and satisfies the probative-prejudice balancing test of Rule 403." *United States v. Lyle*, 919 F.3d 716, 736 (2d Cir. 2019) (quoting *United States v. Greer*, 631 F.3d 608, 614 (2d Cir. 2011)). "To determine whether a district court properly admitted other act evidence, the reviewing court considers whether (1) it was offered for a proper purpose; (2) it was relevant to a material issue in dispute; (3) its probative value is substantially outweighed by its prejudicial effect; and (4) the trial court gave an appropriate limiting instruction to the jury if so requested by the defendant." *United States v. McPartland*, 81 F.4th 101, 115 (2d Cir. 2023) (quoting *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004)).

Mandeep's credit card purchases were admitted for a non-propensity purpose. The district court allowed the evidence to show Singh's criminal intent because he directed Mandeep to purchase iPhones on his personal card at the same time Singh was purportedly having difficulty paying American Express. *See* J. App'x 922 ("[W]hen the heat is on with American Express … [Singh] seeks to continue buying iPhones."). Singh's intent was a material issue at trial. Any prejudicial effect of admitting the evidence against Singh was low because Mandeep's credit card purchases—which went unpaid—were for around $25,000, a meager amount compared to the millions that Singh failed to repay to American Express. *Id.* at 923; *see Lyle*, 919 F.3d at 737. The district court gave two appropriate limiting instructions to the jury about how it could and could not rely on this evidence. *See* J. App'x 1008-09, 2049-50.

The district court admitted evidence about Rajpreet's purchases for a non-propensity purpose as well: to show Rajpreet's criminal intent to defraud American Express. Rajpreet was a co-defendant at Singh's trial, and she spent nearly $50,000 on her personal credit card to buy iPhones at the same time Singh's businesses were struggling to repay American Express. Like Singh, Rajpreet's intent was a key element of the charges against her, *see* 18 U.S.C. § 1344, and the

money spent pales in comparison to the millions owed to American Express. The district court gave appropriate limiting instructions to ensure that the jury did not use this evidence for impermissible purposes. *See* J. App'x 2049-50.

Rajpreet's and Mandeep's personal credit card purchases were admitted for non-propensity purposes on a key issue at trial, were accompanied by appropriate limiting instructions, and resulted in minimal prejudice. The district court did not abuse its discretion by admitting this evidence.

**III**

Singh next challenges the district court's denial of his motion to sever his trial from Rajpreet's. "Considerations of efficiency and consistency militate in favor of trying jointly defendants who were indicted together," and joint trials "are often particularly appropriate in circumstances where the defendants are charged with participating in the same criminal conspiracy." *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003). We will reverse a district court's decision not to sever a trial only if the defendant can "show prejudice so severe that his conviction constitutes a miscarriage of justice." *United States v. Cacace*, 796 F.3d 176, 192 (2d Cir. 2015) (quoting *United States v. Diaz*, 176 F.3d 52, 102 (2d Cir. 1999)).

Singh has not shown that the joint trial constituted a miscarriage of justice. He and Rajpreet were indicted together for allegedly conspiring to defraud American Express. Both denied the charges, and Rajpreet never tried to implicate Singh to strengthen her own defense.

Singh identifies only two pieces of evidence that, he claims, show a miscarriage of justice. First, the district court allowed evidence of Rajpreet's personal credit card purchases to buy iPhones. But as discussed above, the district court did not abuse its discretion in doing so and any potential prejudice was limited. Second, Singh identifies testimony at trial suggesting that Rajpreet threatened Mandeep not to "speak anything against us" or else "face the consequences." J. App'x 905. To be sure, evidence of this threat could prejudice Singh by suggesting that he joined Rajpreet's threat not to speak against "us." But

6

the district court told the jury multiple times that it could not rely on this evidence against Singh. *See id.* at 899, 905, 1270, 1294. "[O]ur legal system presumes that jurors will attend closely to the particular language of such instructions … and follow them." *Samia v. United States*, 599 U.S. 635, 646 (2023) (internal quotation marks and alterations omitted). Coupled with the strong evidence of Singh's guilt, the limiting instructions contained the potential prejudice of a joint trial. *See Diaz*, 176 F.3d at 104 ("[E]ven when the risk of prejudice is high, measures less drastic than severance, such as limiting instructions, often will suffice to cure any risk of prejudice.") (internal quotation marks omitted).

Singh claims that Rajpreet's testimony "placed the blame solely" on him and thereby demonstrates a fundamental injustice. Appellant's Br. 43. The record shows otherwise. While Rajpreet did testify that Singh controlled the corporate accounts and credit cards, she also said that she believed Singh when he said that the bounced payments resulted from a problem with a customer, not from fraud. She even said that the businesses had experienced problems like this in the past. If anything, Rajpreet's testimony added credibility to Singh's primary defense; it did not prejudice him so as to create a miscarriage of justice.

**IV**

Singh argues that, even if the claimed errors individually are not sufficient to warrant relief, the combination of errors by the district court warrants a new trial. *See United States v. Fell*, 531 F.3d 197, 233 (2d Cir. 2008). To succeed on this argument, Singh must show that, "even if no single error requires reversal," the cumulative effect of multiple errors "cast[s] such doubt on the fairness of the proceedings" that "a new trial is warranted." *Id.* To conduct this analysis, we "aggregate[] only *actual errors* to determine their cumulative effect." *United States v. Gabinskaya*, 829 F.3d 127, 135 (2d Cir. 2016) (emphasis added) (quoting *United States v. Rivera*, 900 F.2d 1462, 1470 (10th Cir. 1990)).

In addition to the alleged errors discussed above, Singh offers two additional errors to show that his trial was unfair. First, he claims that the district

court's instruction to the jury about how it should consider Mandeep's testimony did not sufficiently address Mandeep's potential motivation to lie to receive favorable treatment from the government. Second, he points out that the district court inserted a double negative while instructing the jury about what inferences it could or could not make about Singh's decision not to testify.

A new trial is not warranted. As discussed above, the district court's evidentiary rulings and its decision to try Singh and Rajpreet together were not erroneous. The district court's instruction about Mandeep's testimony also does not constitute error. While it may not match word-for-word Singh's proposed instruction, it alerted the jury to Mandeep's potential "interest in currying favor with the prosecution." J. App'x 2053-54. The jury was told to view Mandeep's testimony "with particular caution," that his testimony could be "made up" to "receive favorable treatment," and that hopes of "personal gain" could "color" his account. *Id.* The district court did more than enough to alert the jury about possible bias, and we have upheld virtually identical instructions in the past. *See United States v. Hamilton*, 538 F.3d 162, 173 (2d Cir. 2008); *United States v. Vaughn*, 430 F.3d 518, 522-24 (2d Cir. 2005).

While the district court did erroneously include a double negative when charging the jury, that error alone does not require vacating Singh's conviction. Discussing Singh's right not to testify, the district court said the following: "You may *not* draw *no* inference whatsoever from the fact that Defendant Singh did not take the witness stand. You must not consider the fact that he did not testify." J. App'x 2042 (emphasis added). Singh offered no objection to the district court's statement. While mistaken, the district court's slip of the tongue did not render Singh's trial fundamentally unfair. The entire jury instruction, taken as a whole, made clear that the jury could *not* use Singh's decision against him. *See id.*; *see also United States v. Gansman*, 657 F.3d 85, 91 (2d Cir. 2011) ("No particular wording or phrasing is required for an instruction to be legally sufficient, so long as, taken as a whole, the instruction correctly conveys the applicable law.") (internal quotation marks omitted). Importantly, the written instructions did not contain the double

negative. Any potential effect on Singh's trial was "sufficiently remedied" when the jury received "a copy of the instruction, in which the … erroneous statement is nowhere to be found." *United States v. Capistrano*, 74 F.4th 756, 773 (5th Cir. 2023) (internal quotation marks omitted); *see also United States v. Rodriguez*, 651 F. App'x 44, 47-48 (2d Cir. 2016) (holding that a mistaken oral instruction was "mitigated" because the jury was "provided copies of the written instructions" that "contained the proper legal standard").

## V

Finally, Singh challenges two components of his sentence. First, he challenges the application of a two-point leadership enhancement to his offense level under the Sentencing Guidelines. Second, he challenges a special condition of his supervised release requiring him to "[c]ooperate" with the probation department "in the investigation or approval of any employment." Special App'x 36. We reject both challenges.

## A

When calculating Singh's offense level, the district court applied a two-point enhancement because it found that Singh was "an organizer, leader, manager, or supervisor" in the criminal scheme. U.S.S.G. § 3B1.1(c). We will overturn that finding only if it is "clearly erroneous." *United States v. Szur*, 289 F.3d 200, 218 (2d Cir. 2002) (quoting *United States v. Zichettello*, 208 F.3d 72, 107 (2d Cir. 2000)).

The district court did not clearly err in finding that Singh played a leadership role in the criminal scheme. Mandeep pleaded guilty to money laundering conspiracy for helping Singh to transfer funds out of a corporate account to "conceal[]" those funds from American Express. J. App'x 998, 2226. Mandeep testified that he effected the transfer at Singh's instruction, earning a $29,000 reward in the process. This evidence supports the district court's finding that Singh played a leadership role in "any criminal activity." U.S.S.G. § 3B1.1(c).

9

**B**

The district court imposed a special condition of supervised release at Singh's sentencing, requiring him to "[c]ooperate with the Probation Department in the investigation or approval of any employment." Special App'x 36. Singh did not object before the district court. He argues on appeal both that the district court failed to explain why it adopted the condition and that the condition is overbroad, vague, and delegates too much authority to the probation department.

We are not persuaded. District courts have broad discretion to impose conditions of supervised release, so long as the conditions "reasonably relate[]" to the sentencing factors, are consistent with the policy statements of the Sentencing Commission, and impose "no greater deprivation of liberty than is reasonably necessary to implement the statutory purposes of sentencing." *United States v. Lewis*, 125 F.4th 69, 75 (2d Cir. 2025) (quoting *United States v. Eaglin*, 913 F.3d 88, 94 (2d Cir. 2019)). While a district court must "state on the record" its reasons for imposing a special condition, we will uphold an unexplained condition when "the district court's reasoning is self-evident in the record." *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018) (internal quotation marks omitted). We generally review a district court's imposition of a special condition of supervised release for abuse of discretion. *See United States v. MacMillen*, 544 F.3d 71, 74 (2d Cir. 2008). But when, as in this case, the defendant failed to object at sentencing, we instead review for plain error. *See United States v. Smith*, 949 F.3d 60, 66 (2d Cir. 2020); *Lewis*, 125 F.4th at 74.

The district court did not plainly err by imposing the special condition because the reasons for the condition are evident in the record. Singh used his businesses to defraud American Express of millions of dollars. He made purchases on corporate cards, promised to pay, then quickly transferred funds between his business and personal accounts to avoid payment. He then claimed a longtime customer's failure to pay was the cause of his bounced payments, even though his bank records said otherwise. In light of this history, it is obvious that the district

court required Singh to consult with the probation department when obtaining new employment "to protect the public from further crimes of the defendant" by making sure the new employment would not facilitate similar conduct. 18 U.S.C. § 3553(a)(2)(C).

To the extent that Singh argues the probation department could enforce the condition in an abusive or overly restrictive fashion, that claim is unripe. *See United States v. Balon*, 384 F.3d 38, 46 (2d Cir. 2004); *United States v. Traficante*, 966 F.3d 99, 106 (2d Cir. 2020). Singh may raise an objection if and when the special condition is actually applied to him in an inappropriate way.

*    *    *

We have considered Singh's remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court