*United States v. Thompson*

# In the
# United States Court of Appeals
## For the Second Circuit

---

August Term, 2024
No. 23-6943

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

KENNETH THOMPSON,
*Defendant-Appellant.*

---

On Appeal from a Judgment of the United States District Court for
the Eastern District of New York.

---

SUBMITTED: JANUARY 16, 2025
DECIDED: JULY 10, 2025

---

Before: LIVINGSTON, *Chief Judge*, RAGGI and NARDINI, *Circuit Judges*.

---

Defendant-Appellant Kenneth Thompson was convicted, following a guilty plea, of one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The United States District Court for the Eastern District of

New York (Diane Gujarati, *District Judge*) sentenced Thompson to thirty-seven months of imprisonment, to be followed by a two-year term of supervised release. The court also imposed special conditions of supervised release requiring Thompson to: (i) submit to reasonable searches of his person, property, residence, vehicle, and electronic devices upon reasonable suspicion that he violated a condition of his supervision and that the areas to be searched contain evidence of that violation; (ii) comply with any applicable sex offender registration requirements; and (iii) undergo a mental health evaluation and, if necessary, participate in a mental health treatment program.

Thompson now appeals. Through counsel, he argues that the district court procedurally erred in imposing the three special conditions because it failed to make an individualized assessment of the need to impose them and failed to state on the record its reasons for doing so. In a separate *pro se* submission, Thompson also argues that his counsel before the district court was ineffective and that his guilty plea was involuntary. He therefore attempts to raise several challenges to his conviction and sentence, including that the district court erred in its Sentencing Guidelines calculation and that 18 U.S.C. § 922(g)(1) violates the Second Amendment to the Constitution.

We disagree. First, we conclude that Thompson waived any challenge to the mental health treatment condition because the record shows he consented to its imposition. Next, we hold that the district court made an individualized assessment of the need for the conditions, that the court adequately explained its reasons for imposing them, and that the court's reasoning was amply supported by the record. Lastly, we decline to consider Thompson's ineffective assistance of counsel claim, hold that the district court sufficiently ensured that his plea was voluntary and knowing, and hold that his remaining challenges to his conviction and sentence are barred by the appellate waiver of his plea agreement.

We therefore AFFIRM the judgment of the district court.

2

Amy Busa and Irisa Chen, Assistant United States Attorneys, *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee*.

Lawrence Gerzog, New York, NY, *for Defendant-Appellant*.

WILLIAM J. NARDINI, *Circuit Judge*:

Defendant-Appellant Kenneth Thompson was convicted, following a guilty plea, of one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The United States District Court for the Eastern District of New York (Diane Gujarati, *District Judge*) sentenced Thompson to thirty-seven months of imprisonment, to be followed by a two-year term of supervised release. The court also imposed three special conditions of supervised release requiring Thompson: (i) to submit to reasonable searches of his person, property, residence, vehicle, and electronic devices upon reasonable suspicion that he violated a condition of his supervision and that the areas to be searched contain evidence of that violation; (ii) to comply with any applicable sex offender registration requirements; and (iii) to undergo a mental health evaluation and, if necessary, to participate in a mental health treatment program.

Thompson now appeals. He argues that the district court procedurally erred in imposing the conditions because it failed to make an individualized assessment of the need to impose them and failed to state on the record its reasons for doing so. Thompson also argues that his counsel before the district court was ineffective and that his plea was involuntary. He therefore attempts to raise several challenges to his conviction and sentence, including that the district court erred in its Guidelines calculation and that 18 U.S.C. § 922(g)(1) violates the Second Amendment to the Constitution.

We disagree. First, we conclude that Thompson waived any challenge to the mental health treatment condition because the record shows he consented to its imposition. Next, we hold that the district court made an individualized assessment of the need for the conditions, that the court adequately explained its reasons for imposing them, and that the court's reasoning was amply supported by the record. Lastly, we decline to consider Thompson's ineffective assistance of counsel claim, hold that the district court sufficiently ensured that his plea was voluntary and knowing, and hold that his remaining challenges to his conviction and sentence are barred by the appellate waiver of his plea agreement.

We therefore AFFIRM the judgment of the district court.

## I. Background

On June 6, 2022, officers from the New York City Police Department (NYPD) reported to a subway platform in Jackson Heights, Queens, after a 911 caller reported that someone was

4

pointing a gun at him on a subway car. As the E train pulled into the station, the NYPD officers saw that most passengers had moved to one end of a crowded subway car, to avoid a dispute occurring at the other end. The police found the caller, who said that Thompson had pulled a gun from his waistband and pointed it at him after the two got into an argument. The officers ordered Thompson to stop, but he fled, dropping a black plastic bag into a trash can as he ran. The officers caught Thompson, pulled the bag out of the garbage, and found inside a loaded Norinco .45 caliber automatic pistol and loose rounds of ammunition.

## II.    District Court Proceedings

On April 18, 2023, Thompson pled guilty, pursuant to a plea agreement, to one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Ramon E. Reyes, Jr., *Magistrate Judge*). The plea agreement included an appellate waiver, which barred Thompson from appealing his conviction or prison sentence if that sentence did not exceed 41 months.[1]

---

[1] The full text of the appellate waiver is as follows:

> The defendant agrees not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 41 months or below. This waiver is binding without regard to the sentencing analysis used by the Court. The defendant waives all defenses based on the statute of limitations and venue with respect to any prosecution

5

During the plea hearing, the magistrate judge confirmed with Thompson that he read and understood the plea agreement and had discussed it with counsel. Thompson also confirmed that he was fully satisfied with the representation that his counsel had provided to him. The magistrate judge then went over the terms of the plea agreement, including the appeal waiver: "You . . . have agreed in the plea agreement that if you are sentenced to 41 months or less, that you will not appeal or otherwise challenge your conviction or your sentence. Do you understand?" Gov't App'x. at 28–29. Thompson confirmed that he did.

On May 22, 2023, the district court (Diane Gujarati, *District Judge*) accepted Thompson's guilty plea, finding that Thompson understood "his rights and the consequences of his plea of guilty,"

---

that is not time-barred on the date that this agreement is signed in the event that (a) the defendant's conviction is later vacated for any reason, (b) the defendant violates this agreement, or (c) the defendant's plea is later withdrawn. The defendant further waives the right to raise on appeal or on collateral review any argument that (a) the statutes to which the defendant is pleading guilty are unconstitutional and (b) the admitted conduct does not fall within the scope of the statutes. Nothing in the foregoing waiver of appellate and collateral review rights shall preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

Gov't App'x at 3.

that he "knowingly and voluntarily entered a plea of guilty," and that "there [was] a factual basis for the plea." Dist. Ct. Dkt. 23.

On June 29, 2023, the U.S. Probation Office issued a Presentence Investigation Report (PSR).[2] The PSR described Thompson's offense conduct and detailed his criminal history, which included at least four felonies in New York state court, including (i) a 1982 conviction for rape in the first degree, (ii) 2000 conviction for attempted rape in the first degree, (iii) 1982 conviction for robbery in the first degree, and (iv) 1980 conviction for attempted burglary in the third degree. In addition, Thompson had a 2016 conviction for forcible touching, a misdemeanor.

The Probation Office also submitted a Sentence Recommendation, which proposed that the court impose a sentence of thirty-seven months of imprisonment and two years of supervised release with the following three special conditions: (i) a search condition authorizing a probation officer to conduct a reasonable search of Thompson's "person, property, house, residence, vehicle, papers, computers, . . . other electronic communications or data storage devices or media, or office," upon "reasonable suspicion . . . that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation";

---

[2] On July 31, 2023, the Probation Office issued an addendum amending the PSR based on Thompson's objections. Thompson did not object to the accuracy of the offense conduct detailed in the PSR, but rather objected that the Probation Office omitted facts he deemed essential to the district court's understanding of his case. That additional information was incorporated into the PSR via the addendum.

(ii) compliance with sex offender registration requirements; and (iii) participation "in a mental health treatment program, which may include participation in a treatment program for sexual disorders."[3] Probation Sentencing Recommendation at 1.

---

[3] The full text of the special conditions recommended by the Probation Office is as follows:

The defendant shall submit his person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer. Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

The defendant shall comply with any applicable state and/or federal sex offender registration requirements, as instructed by the probation officer, the Bureau of Prisons, or any state offender registration agency in the state where he resides, works, or is a student.

The defendant shall participate in a mental health treatment program, which may include participation in a treatment program for sexual disorders, as approved by the U.S. Probation Department. The defendant shall contribute to the cost of such services rendered and/or any psychotropic medications prescribed to the degree he is reasonably able, and shall cooperate in securing any applicable third-party payment. The defendant shall disclose all financial information and documents to the Probation

In his sentencing submission, Thompson objected to the condition requiring mental health treatment, including "for sexual disorders," on the grounds that it was not relevant to his current offense and that he had no significant mental health history. Dist. Ct. Dkt. 30 at 3.

On August 7, 2023, Thompson appeared before the district court for sentencing. Thompson and his counsel affirmed that they had reviewed and discussed both the PSR and the Sentence Recommendation. Thompson again told the court that he was satisfied with his counsel's representation. After confirming there were no further objections to the PSR beyond what Thompson had included in his sentencing submission, the district court adopted the factual information included in the PSR. In light of the seriousness of Thompson's crime, his criminal history, his upbringing, and his health, the court sentenced Thompson to thirty-seven months in prison, followed by two years of supervised release.

The court stated it was imposing three special conditions of supervised release "[g]iven the nature and circumstances of [Thompson's] offense, and [his] history and characteristics." Gov't App'x at 88. The court imposed the search condition and sex offender

---

Department to assess his ability to pay. As part of the treatment program for sexual disorders, the defendant shall participate in polygraph examinations and/or visual response testing to obtain information necessary for risk management and correctional treatment.

Probation Sentencing Recommendation at 1.

registration condition largely as written in the Probation Officer's Sentence Recommendation. With respect to the mental health treatment condition to which Thompson had initially objected, the court indicated that it intended to impose a "more general" mental health-related condition than the one recommended by the Probation Office, *id.* at 50, and imposed the following condition, which made no mention of sexual disorders:

> The defendant shall undergo a mental health evaluation, and if deemed necessary, participate in a mental health treatment program as approved by the U.S. Probation Department. The defendant shall contribute to the cost of such services rendered and/or any psychotropic medications prescribe[d] to the degree he is reasonably able[,] [a]nd shall cooperate in securing any applicable third-party payment. The defendant shall disclose all financial information and documents to the Probation Department to assess his ability to pay.

*Id.* at 89. The district court asked the parties if there were any objections to the conditions as imposed. Both said no.

On August 7, 2023, the district court entered a written judgment, which included the supervised release conditions as recommended by the Probation Office, except for the mental health condition, which was imposed as set forth on the record at the sentencing hearing.

Thompson now appeals his conviction and sentence.

## III. Discussion

On appeal, Thompson argues that the district court procedurally erred by failing to make an individualized assessment when imposing the three special conditions of supervised release, and by failing to state on the record its reasons for imposing those conditions. Thompson also argues that his counsel before the district court was ineffective and that his plea was involuntary. He therefore attempts to raise several challenges to his conviction and sentence, including that the district court erred in its Guidelines calculation and that 18 U.S.C. § 922(g)(1) violates the Second Amendment to the Constitution.

### a. Conditions of Supervised Release

We generally "review the imposition of conditions of supervised release for abuse of discretion." *United States v. Eaglin*, 913 F.3d 88, 94 (2d Cir. 2019). When, as here, the defendant does not object to the conditions before the district court, we review for plain error. *See United States v. Green*, 618 F.3d 120, 122 (2d Cir. 2010); *see also* Fed. R. Crim. P. 52(b). "Under plain error review, an appellant must demonstrate that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Napout*, 963 F.3d 163, 183 (2d Cir. 2020) (internal quotation marks and citation omitted). For the

11

reasons set forth below, we hold that the district court committed no error at sentencing. Accordingly, we need not consider the remaining three prongs of plain-error review.

"Our caselaw is clear that a district court retains wide latitude in imposing conditions of supervised release." *United States v. Lewis*, 125 F.4th 69, 75 (2d Cir. 2025) (alteration adopted) (internal quotation marks and citation omitted). "In general, a district court may impose special conditions of supervised release that are reasonably related to certain statutory factors governing sentencing, involve no greater deprivation of liberty than is reasonably necessary to implement the statutory purposes of sentencing, and are consistent with pertinent Sentencing Commission policy statements." *United States v. Farooq*, 58 F.4th 687, 694 (2d Cir.) (internal quotation marks and citation omitted), *cert. denied*, 143 S. Ct. 2677 (2023). Relevant sentencing factors include "'the nature and circumstances of the offense and the history and characteristics of the defendant'; 'the need for the sentence imposed to afford adequate deterrence to criminal conduct'; 'the need to protect the public from further crimes of the defendant'; and 'the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.'" *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018) (quoting U.S.S.G. § 5D1.3(b)). When a fundamental liberty interest is at stake, the condition is "reasonably necessary only if the deprivation is narrowly tailored to serve a compelling government interest." *United States v. Bolin*, 976 F.3d 202, 210 (2d Cir. 2020) (internal quotation marks and citation omitted).

Additionally, "[a] district court is required to make an individualized assessment when determining whether to impose a special condition of supervised release, and to state on the record the reason for imposing it; the failure to do so is error." *Betts*, 886 F.3d at 202. "In the absence of such an explanation, we may uphold the condition imposed only if the district court's reasoning is self-evident in the record." *Id.* (internal quotation marks and citation omitted). When the reason for a special condition "is self-evident in the record . . . and the condition[ ] meet[s] the purposes of supervised release, any error . . . in this respect is harmless." *United States v. Balon*, 384 F.3d 38, 41 n.1 (2d Cir. 2004).

### 1.    Mental Health Treatment Condition

We first consider the district court's imposition of the mental health treatment condition. We conclude that Thompson has waived any challenge to the condition's imposition. At sentencing, the district court explained that it planned to impose a more general mental health treatment condition that (unlike the one recommended by the Probation Office) made no mention of treatment for sexual disorders, but before doing so, it directed defense counsel to consult with his client. Thompson's counsel then reported that he had spoken with his client and that Thompson "knows the good in counseling" and therefore "ha[d] no issue with" what the district court was "suggesting." Gov't App'x at 75. A defendant who expresses agreement with a special condition of supervised release waives any challenge to that condition on appeal. *See United States v. Spruill*, 808 F.3d 585, 597 (2d Cir. 2015) ("[T]his court has recognized waiver

13

where a party actively solicits or agrees to a course of action that he later claims was error.").  Thompson's consent to the district court's proposed special condition in lieu of the condition recommended by the Probation Office "constitutes a true waiver which . . . negate[s] even plain error review." *United States v. Quinones*, 511 F.3d 289, 321 (2d Cir. 2007) (internal quotation marks and citation omitted).

Even if Thompson's challenge to the condition had not been waived but merely forfeited, we identify no error—much less plain error—because the court's remarks, in their totality, were sufficient to satisfy "the requirement that [a] court must conduct an individualized assessment . . . and must state on the record the reason for imposing [a special condition]." *United States v. Sims*, 92 F.4th 115, 126 (2d Cir. 2024).  The district court said it was ordering the special conditions given Thompson's personal "history and characteristics." Gov't App'x at 88.  Just moments earlier, the district court had highlighted Thompson's difficult upbringing and background, stating that "[t]he record reflects the defendant has had struggles during his life, including from an early age.  He has suffered abandonment and abuse, and I have considered those." *Id.* at 85.  The district court went on to tailor the mental health treatment condition, omitting the Probation Office's recommended focus on sexual disorder treatment and instead imposing a more general mental health treatment program because "[t]hat [could] be very helpful to [Thompson]." *Id.* at 74.  We have previously stated that "[a] court may require as a special condition of [supervised release] that a defendant participate in a mental health program '[i]f the court has

14

reason to believe that the defendant is in need of psychological or psychiatric treatment.'" *See United States v. Peterson*, 248 F.3d 79, 84 (2d Cir. 2001) (third alteration in original) (quoting U.S.S.G. § 5B1.3(d)(5)).

Indeed, the record makes clear that the district court was presented with, and considered, an ample basis for imposing the mental health treatment condition. Thompson admitted he was diagnosed with anxiety as a young adult and was prescribed an antidepressant while serving a sentence for a previous conviction. He also stated at his plea hearing that he "was at a psych ward for the state . . . for stress and anxieties." Gov't App'x at 13. At sentencing, in arguing for a downward departure, defense counsel emphasized Thompson's "pretty horrible childhood," stating that "it's difficult to imagine a tougher start in life," *id.* at 65–66, and urged the court to consider the emotional and physical abuse Thompson had suffered at a young age. As noted above, when the court gave Thompson the opportunity to discuss the mental health treatment condition, defense counsel stated that "after speaking with Mr. Thompson . . . [h]e knows the good in counseling, and to what you're suggesting, he has no issue with [it]." *Id.* at 75. Thompson's own admissions on the record of his struggles with mental health and his acknowledgment of the benefit of treatment fully support the district court's imposition of the condition. *See United States v. Arguedas*, 134 F.4th 54, 70 (2d Cir. 2025) (finding that the reasoning for a mental health treatment condition was "self-evident in the record" given the defendant's "history of . . . struggles with mental health"). Thus, based on Thompson's

15

statements to the Probation Office, at his plea hearing, and at sentencing, the condition is reasonably related to his history and characteristics.

## 2.     Search Condition

We next consider the district court's imposition of the search condition.  As stated above, the court said it was imposing all three special conditions of supervised release given "the nature and circumstances of [Thompson's] offense, and [his] history and characteristics."  Gov't App'x at 88.  In this case, the court's remark adequately demonstrated the district court's individualized assessment of the need for the search condition, and explained its basis for imposing it.   As we have previously explained, "[t]he court [is] under no obligation . . . to pick through every condition and explain, point-by-point, how each was responsive to the offending conduct." *United States v. Kunz*, 68 F.4th 748, 760 (2d Cir. 2023).  "The specific obligation to state on the record the reason for imposing a special condition is merely a subset of the broader requirement to state in open court the reasons for the particular sentence . . . [a]nd that requirement leaves the appropriateness of brevity or length to the judge's own professional judgment."  *United States v. Lawrence*, 139 F.4th 115, 124 (2d Cir.  2025) (internal quotation marks and citations omitted); *see also United States v. Jenkins*, 854 F.3d 181, 194 (2d Cir. 2017) ("[A] district court is under no obligation to provide elaborate reasons for the sentence it imposes.").  Just as we have held that a district court typically need not separately articulate its reasons for imposing a term of supervised release when it has already

16

generally stated its reasons for imposing a term of imprisonment, *see United States v. Williams*, 998 F.3d 538, 541–42 (2d Cir. 2021), a district court generally need not articulate separate reasons for imposing every single special condition where it has already explained the overall reasons for its sentencing decision. We therefore conclude that the district court demonstrated its individualized assessment of the search condition when it stated that, in imposing these special conditions, it was taking into account the nature and circumstances of Thompson's offense, as well as his history and characteristics—all of which were laid out in detail in the PSR and sentencing submissions. *See Lawrence*, 139 F.4th at 124 n.8 (explaining district court's reliance on PSR's "case-specific reasons" may provide "precisely the type of individualized assessment our precedent requires") (internal quotation marks and citation omitted).

The court's reliance on these factors was amply supported by the record here, given Thompson's history of recidivism and the nature of his past crimes. The court pointed out that Thompson has a "serious[,] long and varied criminal history," which includes "convictions for rape, attempted rape, forcible touching, robbery and burglary." Gov't App'x at 84. The court noted that despite his prior "sentences, some lengthy," Thompson remained undeterred from committing further crimes, including two crimes that he had committed more recently. *Id.* at 84–85. The record also reflects that Thompson's attempted rape offense was committed while he was on parole supervision for his conviction of first-degree rape, casting additional doubt on his ability to conduct himself in good faith while

17

on supervised release. "Under these circumstances, the special search condition . . . is necessary for ensuring the effectiveness of supervision." *United States v. Robinson*, 134 F.4th 104, 112 (2d Cir. 2025). "[I]t operates as an important means for enforcing the court's other conditions and enabling the detection of evidence of supervised release violations." *Id.* For these reasons, we find that the condition is reasonably related to Thompson's history and characteristics and the need for deterrence, and it meets the purposes of supervised release.

Thompson argues that the breadth of the search condition imposed here, which includes searches of electronic devices, "cannot possibly be viewed as in compliance with this Court's precedents." Appellant Br. at 14–15. We disagree. We recently upheld an identical search condition containing an electronic search provision in *United State v. Robinson*. *See* 134 F.4th at 108, 112. In that case, we held that despite the district court's failure to conduct an individualized assessment when imposing the condition,[4] the need for the condition was self-evident in the record given the defendant's "criminal history" and "extensive history of recidivism." *Id.* at 111. The imposition of an identical electronic search provision in this case is therefore

---

[4] In *Robinson*, we held there were insufficient indicia of an individualized assessment where the district court said merely that "the special condition of search is obviously indicated here." 134 F.4th at 108. In the present case, by contrast, the district court pointed to several of the § 3553(a) factors as the basis for imposing the special conditions in question, such as the nature and circumstances of the offense, as well as Thompson's history and characteristics. And in context, as we explain in the text, it was clear which aspects of the record the district court was referring to, such as Thompson's recidivism and criminal history.

18

entirely appropriate for similar reasons. Additionally, in *Robinson* we stated that "the justification for [the] electronic search portion of the condition would be even more apparent if [the defendant's] [underlying or prior] convictions involved sex offenses." *Id.* at 112 (referencing U.S.S.G. § 5D1.3(d)(7)(C) (recommending electronic search conditions for those convicted of sex offenses)). Given Thompson's history of sex offenses, we find that in this case the electronic search provision is especially justified.

Thompson also argues that the search condition implicates significant liberty interests that the district court failed to consider. We conclude that this argument, too, is without merit. This Court has held that "[a] search condition that requires reasonable suspicion does not implicate . . . a fundamental [liberty] interest" that would "require narrow tailoring." *Lawrence*, 139 F.4th at 125 (internal quotation marks and citation omitted). Moreover, under the circumstances of this case, the search condition "involve[s] no greater deprivation of liberty than is reasonably necessary to implement the statutory purposes of sentencing." *Lewis*, 125 F.4th at 77 (internal quotation marks and citation omitted). We have made clear that "[a]n offender on supervised release has a diminished expectation of privacy that is inherent in the very term '*supervised* release.'" *Balon*, 384 F.3d at 44 (internal quotation marks and citation omitted). "As we have repeatedly explained in affirming [similar] search conditions, th[e]se conditions do not constitute a greater deprivation than reasonably necessary *because* they require reasonable suspicion." *United States v. Oliveras*, 96 F.4th 298, 315 (2d Cir. 2024). That the

19

search condition here includes an electronic search provision does not change our analysis. We know of no reason why a limited search condition would implicate a greater liberty interest because it reaches a supervisee's electronic devices in addition to his home and person. We therefore find that the condition was properly imposed.

We take this opportunity to emphasize again that a district court can reasonably conclude that such search conditions are "necessary for ensuring the effectiveness of supervision," *Robinson*, 134 F.4th at 112, and that "both electronic and non-electronic search conditions are often crucial" for doing so, even where the record does not indicate electronic devices were misused in the underlying crime of conviction or criminal history, *id.* at 112 n.4. As we have previously observed, district courts exercise their discretion to "impose terms of supervised release in nearly every federal sentence, despite being required to do so only in certain limited circumstances." *Sims*, 92 F.4th at 119–20. This demonstrates a clear consensus amongst the district courts—who are on the front lines working with released defendants—that supervised release is essential for "assist[ing] individuals in their transition to community life." *United States v. Johnson*, 529 U.S. 53, 59 (2000). The courts have an "overwhelming interest" in monitoring those on supervised release to "reduc[e] recidivism and thereby promot[e] reintegration and positive citizenship" among supervisees. *Samson v. California*, 547 U.S. 843, 853 (2006). We have therefore recognized that in overseeing individuals on supervised release, probation officers must be given "considerable investigative leeway," *United States v. Reyes*, 283 F.3d 446, 457 (2d Cir.

2002), because in bringing a supervisee's offending conduct to the attention of the court, they act as the "eyes and ears" of the judge, *id*. at 455. A search condition, like the one imposed here, can be an important tool for probation officers to carry out that mandate. To strike such a condition here would improperly intrude upon the district court's broad discretion to determine how best to monitor Thompson's adherence to conditions of release and therefore impair the court's ability to enforce those conditions.

We also emphasize again the limited nature of the search condition here. The condition requires that the Probation Office have (i) reasonable suspicion that Thompson has violated a condition of his supervised release; *and* (ii) reasonable suspicion that evidence of that violation is to be found in one of the specified areas. Both the justification for the search and the limitation on the search parameters directly relate to the district court's need to ensure adequate supervision of a releasee—the Probation Office can search only those areas reasonably suspected to be implicated in a possible violation of the court-imposed conditions of supervised release. *See Robinson*, 134 F.4th at 113–14 (holding that an identical condition requiring reasonable suspicion was constitutional given the limitations of the condition). To constrain the district court to further limit a search condition to the contours of a defendant's prior misconduct—and parse through whether those violations entailed the discovery of particular evidence in, say, his home versus his phone versus his car or other property—is unnecessary, given that the search condition as written already requires reasonable suspicion that evidence of a

21

current violation will be found in one of those areas. To conclude otherwise would undermine the core purposes of supervised release—"rehabilitation and protecting society from *future* criminal violations." *United States v. Knights*, 534 U.S. 112, 113 (2001) (emphasis added).

### 3. Sex Offender Registration Condition

Finally, with respect to the sex offender registration condition, we conclude for the same reasons stated above that the district court made an individualized assessment in imposing the condition and that this condition, too, is supported by the record. District courts have broad discretion to impose certain conditions of supervised release related to a defendant's sexual behavior even when the present conviction does not involve a sexual offense. *See United States v. Dupes*, 513 F.3d 338, 343–44 (2d Cir. 2008) (upholding conditions requiring the defendant to, *inter alia*, attend sex offender treatment and register as a sex offender where his conviction was for securities fraud). Here, Thompson had multiple prior convictions for sex offenses, including rape, attempted rape, and forcible touching. Thompson does not dispute that the law already requires him to register as a sex offender on the New York State Sex Offender Registry. The condition therefore simply requires Thompson to comply with legal obligations to which he is already subject. It is hardly a revolutionary proposition to require a supervisee to obey the law. The condition was therefore entirely appropriate.

Accordingly, we affirm the district court's imposition of the special conditions of supervised release.

### b. Ineffective Assistance of Counsel

Thompson contends for the first time on appeal that his trial counsel was constitutionally ineffective and that his conviction should therefore be vacated. He argues *pro se* that trial counsel failed to raise certain stronger issues over weaker ones, failed to appeal the denial of his bail application, waived a preliminary hearing, and failed to object to certain portions of the PSR, even though he twice confirmed at his plea hearing that he was fully satisfied with his counsel's representation.

When an ineffective assistance of counsel claim is raised on direct appeal, the Court may: (1) decline to hear the claim and permit the appellant to raise the issue under 28 U.S.C. § 2255; (2) remand to the district court for necessary factfinding; or (3) decide the claim on the record before it. *United States v. Adams*, 768 F.3d 219, 226 (2d Cir. 2014). In general, we have preferred the first option when "there has been no opportunity to fully develop the factual predicate for the ineffective assistance of counsel claim." *United States v. Ortiz*, 100 F.4th 112, 118 (2d Cir. 2024) (internal quotation marks omitted). Such claims often cannot "be assessed . . . without [the] benefit of [further] district court findings" and therefore are "not amenable to adjudication" on appeal. *United States v. Laurent*, 33 F.4th 63, 96–97 (2d Cir. 2022).

Because Thompson did not raise his ineffective assistance claim in the district court, and did not submit to this Court the transcript of the proceeding denying his application for bail, "there is no[t a sufficient] record that would permit [it] to be assessed on this appeal." *Id.* at 97. His arguments are based primarily on his attorney's strategic decisions, such as the decision to waive preliminary hearings or advance certain arguments. But the record tells us nothing about why counsel made those choices, much less why they could be considered deficient or prejudicial in any way. We therefore decline to adjudicate the claim on this appeal. Thompson is free to raise the claim in the district court—which is "best suited to developing the facts necessary to determining the adequacy of representation"—through a motion under 28 U.S.C. § 2255. *Massaro v. United States*, 538 U.S. 500, 505 (2003).

### c. Appellate Waiver

Thompson raises additional *pro se* challenges to his sentence and conviction, including that the district court erred in its Guidelines calculation and that § 922(g)(1) violates the Second Amendment. The valid appeal waiver in this case, *see supra* n.1, requires that we dismiss these challenges.

"This Court has repeatedly held that a knowing and voluntary waiver of the right to appeal a sentence is presumptively enforceable." *United States v. Ojeda*, 946 F.3d 622, 629 (2d Cir. 2020). "[T]he exceptions to this rule occupy a very circumscribed area of our jurisprudence." *United States v. Borden*, 16 F.4th 351, 354–55 (2d Cir.

24

2021) (internal quotation marks and citation omitted). In certain cases, "a defendant may have a valid claim that the waiver of appellate rights is unenforceable, such as [1] when the waiver was not made knowingly, voluntarily, and competently, [2] when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, [3] when the government breached the plea agreement, or [4] when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus amounting to an abdication of judicial responsibility subject to mandamus." *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000) (alteration adopted) (internal quotation marks and citations omitted).

Thompson argues that his plea was unknowing because the district court failed to inform him that to prosecute under § 922(g)(1) and § 924(a)(2), the government would have to prove not only that Thompson knew he possessed a firearm, but also that he knew he was a felon at the time he committed the offense. *See Rehaif v. United States*, 588 U.S. 225, 237 (2019). Federal Rule of Criminal Procedure 11(b)(1)(G) requires the district court to "inform the defendant of," and ensure "that the defendant understands, . . . the nature of each charge to which the defendant is pleading." A district court's failure "to comply with the important strictures of Rule 11" may render an appellate waiver unenforceable. *United States v. Lloyd*, 901 F.3d 111, 118 (2d Cir. 2018). Where, as here, a defendant alleges a violation of Rule 11 but did not object to the violation at the time of the plea, this Court reviews the alleged violation for plain error under Rule 52(b).

25

*United States v. Cook*, 722 F.3d 477, 481 (2d Cir. 2013). "In assessing the likely effect of a Rule 11 error, we are to examine the entire record." *United States v. Torrellas*, 455 F.3d 96, 103 (2d Cir. 2006).

We find that the district court met its obligations under Rule 11 and sufficiently informed Thompson of the elements of his crime. The magistrate judge explicitly stated to Thompson at his plea hearing that in addition to proving that he "knowingly possessed the firearm and ammunition as charged in the indictment," "the government would [also] have to prove that [Thompson was] convicted in any court of a crime punishable by imprisonment for a term exceeding one year and that [he] *knew* [he] had been convicted of such a crime." Gov't App'x at 17 (emphasis added). The magistrate judge then asked Thompson if he understood its explanation of the elements of the crime and the government's burden of proof, to which Thompson confirmed that he did. Moreover, the magistrate judge confirmed Thompson "fully discussed [with counsel] the charge in the indictment," *id.* at 16, which states that Thompson was charged with possessing a firearm and ammunition while "*knowing* that he had previously been convicted . . . of one or more crimes" constituting a felony, App'x at 10 (emphasis added). The record therefore reflects that the district court ensured Thompson understood the elements of the crime and entered into the guilty plea knowingly and voluntarily.

26

We conclude that the plea agreement therefore bars Thompson's remaining challenges to his sentence and conviction.[5] His constitutional claim and challenge to the district court's Guidelines calculation are explicitly barred by the language of the appellate waiver, which states that Thompson "agrees not to file an appeal or otherwise challenge . . . [his] conviction or sentence" including by raising "any argument that . . . the statutes to which [he] is pleading guilty are unconstitutional." Gov't App'x at 3; *see also Cook v. United States*, 84 F.4th 118, 125 (2d Cir. 2023) (holding that a valid waiver precludes a post-conviction claim that a defendant's conviction was predicated on an unconstitutional statute). Though we have left open the question of whether a defendant can challenge the constitutionality of his conviction on appeal notwithstanding a waiver in the rare circumstance when there has been a "complete miscarriage of justice," *Cook.* 84 F.4th at 125 n.4 (internal quotation marks and citation omitted), there has been no miscarriage of justice here. Thompson argued before the district court that § 922(g)(1) was unconstitutional pursuant to *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022). But the Supreme Court issued its decision in *Bruen* on June 23, 2022, almost a year before Thompson pled guilty to the instant offense and the district court accepted his plea. Thompson thus had an adequate opportunity to plead not guilty or

---

[5] To the extent Thompson attempts to argue that the district court lacked jurisdiction because he is a "sovereign citizen" or because his case was improperly removed from state court to federal court, any such arguments are meritless. Thompson has been charged with a crime under federal law, 18 U.S.C. § 922(g)(1), and federal district courts "have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States," 18 U.S.C. § 3231.

withdraw his guilty plea before the court based on a challenge under *Bruen*. And in any case, his argument would be foreclosed by our Court's recent decision in *Zherka v. Bondi*, 140 F.4th 68 (2d Cir. 2025), which rejected an identical argument and upheld the constitutionality of § 922(g)(1). The claims are therefore barred.

## IV. Conclusion

In sum, we hold as follows:

1. Thompson's consent to the mental health treatment condition waives any challenge to that condition on appeal.

2. The district court's explanation that it was imposing the special conditions given the nature and circumstances of Thompson's offense, as well as his history and characteristics, manifested both an individualized assessment of the need for each condition and a statement of its reasons for their imposition. The district court therefore did not procedurally err in imposing the conditions.

3. The district court's reasons for imposing the conditions were amply supported by the record.

4. The district court was not required to justify the inclusion of a particular place or thing under the defendant's custody or control in the search condition, where the condition requires reasonable suspicion that the defendant has violated a condition of his supervised release and that evidence of a violation would be found there.

5. We decline to consider Thompson's claim of ineffective assistance of counsel, which is raised for the first time on appeal.

6. The district court ensured that Thompson's plea was voluntary and knowing, and consequently his remaining challenges to his conviction and sentence are barred by the appellate waiver in his plea agreement.

Accordingly, we AFFIRM the district court's judgment.