24-347-cr
*United States v. Gomez*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of September, two thousand twenty-five.

Present:

> GUIDO CALABRESI,
> BARRINGTON D. PARKER, JR.,
> WILLIAM J. NARDINI,
> *Circuit Judges*.

---

UNITED STATES OF AMERICA,

> *Appellee*,

v.                                                                24-347-cr

ANTHONY GOMEZ,

> *Defendant-Appellant*.

---

| | |
|---|---|
| For Appellee: | CHELSEA L. SCISM (Jacob R. Fiddelman, *on the brief*), Assistant United States Attorneys, *for* Edward Y. Kim, Acting United States Attorney for the Southern District of New York, New York, NY. |
| For Defendant-Appellant: | DANIEL M. PEREZ, Law Offices of Daniel M. Perez, Newton, NJ. |

Appeal from a judgment of the United States District Court for the Southern District of

New York (Jesse M. Furman, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Anthony Gomez appeals from a judgment of the United States District Court for the Southern District of New York (Jesse M. Furman, *District Judge*) entered on January 26, 2024, following his guilty plea to one count of possessing ammunition after a felony conviction. The offense occurred while Gomez was serving the final portion of a prior federal prison sentence at a halfway house in the Bronx, New York, which permitted inmates to leave the facility for limited time periods for specific purposes. While away from the facility on an approved day pass in June 2023, Gomez obtained a gun and was carrying it in his sweatshirt on a Bronx street when he encountered New York City Police Department officers patrolling the area. After initially trying to hide the gun in the wheel well of a car, Gomez grabbed the gun, ignored the officers' orders to put it down, and ran down the street, prompting the officers to give chase. As the officers closed in, Gomez fired a shot in their direction; although several officers and bystanders, including a family with young children, were in the vicinity, no one was hit. Gomez evaded the officers and hid in a nearby building, but he was apprehended several hours later.

The district court sentenced Gomez to 120 months in prison—more than double the high end of the advisory sentencing range under the United States Sentencing Guidelines—followed by three years of supervised release. On appeal, Gomez argues that the court erred in imposing a search condition as a special condition of supervised release without orally pronouncing the entire condition and articulating an adequate justification for it, and that his sentence is substantively unreasonable.[1] We assume the parties' familiarity with the case.

---

[1] The search condition reads: "You shall submit your person, and any property, residence, vehicle, papers, computer, other electronic communication, data storage devices, cloud storage or media, and effects to a search by

## I.      Oral Pronouncement of the Search Condition

Gomez urges us to strike the search condition as a special condition of supervised release because the district court did not orally recite its full terms at sentencing, which he argues violated Federal Rule of Criminal Procedure 43(a).  But we have recently held that "a sentencing court need not read the full text of every condition on the record."  *United States v. Maiorana*, No. 22-1115-CR, 2025 WL 2471027, at *6 (2d Cir. Aug. 28, 2025) (en banc).  Rather, the court may "as part of the pronouncement of the sentence in the presence of the defendant during the sentencing proceeding, expressly adopt or specifically incorporate by reference particular conditions that have been set forth in writing and made available to defendant in the [Presentence Report], the Guidelines, or a notice adopted by the court."  *Id.*  That is precisely what happened here.  The search condition was contained verbatim in the Presentence Report, which Gomez confirmed he had read and discussed with his lawyer prior to sentencing.  And when the district court pronounced the sentence, it expressly cross-referenced the Presentence Report, stating that Gomez "must meet the special conditions that are set forth on page 34 [of the Presentence Report], including the search condition."  App'x 114.  Accordingly, Gomez's challenge to his condition of supervised release fails.

## II.      Reasonableness of the Sentence

Gomez also argues that his sentence was procedurally and substantively unreasonable.  We review the procedural and substantive reasonableness of a sentence "under a deferential abuse-of-discretion standard."  *United States v. Yilmaz*, 910 F.3d 686, 688 (2d Cir. 2018).

---

any United States Probation Officer, and if needed, with the assistance of any law enforcement. The search is to be conducted when there is reasonable suspicion concerning violation of a condition of supervision or unlawful conduct by the person being supervised. Failure to submit to a search may be grounds for revocation of release. You shall warn any other occupants that the premises may be subject to searches pursuant to this condition. Any search shall be conducted at a reasonable time and in a reasonable manner."  App'x 122.

## A. Procedural Reasonableness

Gomez contends that the search condition was procedurally unreasonable because the district court "failed to make particularized findings explaining why it was necessary." Appellant's Br. 38. He also argues that the search condition is overbroad because it authorizes the search of electronic devices. "A district court is required to make an individualized assessment when determining whether to impose a special condition of supervised release, and to state on the record the reason for imposing it; the failure to do so is error." *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018). Absent such an explanation, we will affirm only if "the district court's reasoning is self-evident in the record." *Id.* Moreover, the district court "generally need not articulate separate reasons for imposing every single special condition where it has already explained the overall reasons for its sentencing decision." *United States v. Thompson,* 143 F.4th 169, 178 (2d Cir. 2025). Because Gomez did not raise this argument at sentencing, we review for plain error. *See United States v. Smith*, 949 F.3d 60, 66 (2d Cir. 2020).

The justification for the search condition is self-evident in the record. As the district court recognized at sentencing, Gomez has now been convicted of four firearms offenses, and this offense was "extraordinarily serious." App'x 110. Within hours of leaving his halfway house, Gomez was able to acquire a loaded firearm and shortly thereafter used that gun to shoot toward police officers "in broad daylight on a crowded street with a family with small children in the vicinity." *Id.* Gomez's three prior firearms convictions arose from four incidents in which he engaged in violent conduct that created a substantial risk of injuring others: in the first, he struck one victim on the head with a gun and threatened another while pointing a gun at her in the second, he discharged a gun several times; and in the third and fourth, he pistol-whipped victims in two separate armed robberies. Gomez's repeated possession of firearms alone provides a sufficient

4

basis for the search condition. Several additional factors support the district court's decision, including that Gomez admitted to possessing a dangerous weapon while serving his prior federal prison sentence, and that he attempted to bring drugs (or what appeared to be drugs) into jail on multiple occasions. In short, the record leaves no doubt that the imposition of the search condition was an appropriate exercise of the district court's broad discretion.

And contrary to Gomez's argument that the electronics component of the condition is unsupported, we have explained that it is unnecessary for a district court to "limit a search condition to the contours of a defendant's prior misconduct—and parse through whether those violations entailed the discovery of particular evidence in, say, his home versus his phone versus his car or other property . . . given that the search condition as written already requires reasonable suspicion that evidence of a current violation will be found in one of those areas." *Thompson*, 143 F.4th at 181. And in any event, the record shows that while Gomez was hiding from the police, he used his cell phone to call his halfway house to lie about being unable to make curfew. Accordingly, even if there were a requirement that the electronic portion of a search condition must be justified by reference to the defendant's prior misconduct, such a requirement would have been self-evidently satisfied in this case.

### B. Substantive Reasonableness

Gomez also argues that his 120-month sentence, which far exceeded the Guidelines range of 46 to 57 months, was substantively unreasonable. A sentence is substantively unreasonable "when it is manifestly unjust or when it shocks the conscience." *United States v. Mumuni*, 946 F.3d 97, 107 (2d Cir. 2019). When reviewing for substantive reasonableness, "we take into account the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion, and bearing in mind the institutional advantages of district courts." *United States v.*

5

*Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc).

The district court thoroughly explained its reasons for imposing a 120-month sentence. It first acknowledged that it considered the sentencing factors set forth in 18 U.S.C. § 3553(a), as required, and that it had an obligation to "impose a sentence that is sufficient, but no greater than necessary, to serve the purposes of sentencing." App'x 109. Turning to its decision, the court agreed with defense counsel that the statutory maximum sentence of 180 months would be excessive but concluded that an above-Guidelines sentence was warranted. The court determined that "the seriousness of this offense is . . . not adequately reflected in the [G]uideline[s] in the sense that it's not simply possession of ammunition by someone previously convicted of a felony." *Id.* at 110. The offense "also involved [Gomez] firing a gun in broad daylight on a crowded street with a family with small children in the vicinity and in the direction of police officers," and he did this while he was already "in federal custody, serving the end of a lengthy sentence [imposed] in this Court." *Id.* Although the court took Gomez at his word that he did not "actually intend to hit anyone" when he fired the shot, it emphasized that his conduct was "extraordinarily risky" and "easily could have resulted in serious injury, if not death." *Id.* at 110–11. The court also placed substantial weight on Gomez's criminal record. "He may not be an armed career criminal in the legal sense of the word, but he certainly is in the lay sense of the word," the court observed, noting that this was Gomez's seventh conviction overall, his second federal conviction, and his fourth for a firearm offense. *Id.* at 111. Further, the court noted that Gomez has "had repeated parole violations and repeated disciplinary violations in prison." *Id.* In short, the court concluded, Gomez's "record demonstrates . . . repeated violations of the law with respect to firearms, escalating violence; and a complete[] inability to conform behavior to the law and peaceful behavior." *Id.*

6

Although Gomez's 120-month sentence constitutes a substantial upward variance from the Guidelines range, the district court's decision was not substantively unreasonable. Gomez argues that the court did not adequately consider mitigating factors, and that there is "more to [him] than simply his offense of conviction." Appellant's Br. 51. But the court did consider various mitigating factors, including that Gomez did not intend to hit anyone when he fired toward the officers, and the difficult conditions of confinement that he experienced during the COVID-19 pandemic. At bottom, this argument amounts to a disagreement with the court's decision to prioritize certain of the § 3553(a) factors, but that alone does not provide a basis for invalidating the sentence. *See United States v. Pope*, 554 F.3d 240, 246 (2d Cir. 2009) ("[W]e have never held that a district court's particular reliance on one factor to justify departing from the Guidelines is suggestive of unreasonableness; we have only said that *unjustified* reliance upon any one factor suggests unreasonableness."). Considering all the reasons set forth by the district court, and affording its decision due deference, we conclude that the district court did not abuse its discretion in imposing a sentence of 120 months.

\* \* \*

We have considered Gomez's remaining arguments and find them to be unpersuasive. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

7